

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | Case No. 15-01446 |
| | ) | Chapter 7 |
| ANABEL GASMEN CABEBE, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| STATE OF HAWAII, by its OFFICE | ) | Adv. Pro. No. 16-90011 |
| OF CONSUMER PROTECTION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANABEL GASMEN CABEBE, | ) | |
| | ) | Related Document No. 14 |
| Defendant. | ) | |
| ———————————————— | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff State of Hawaii Office of Consumer Protection's Motion for

Summary Judgment, filed August 4, 2016 (the "Motion"), came on for hearing

before the Honorable Robert J. Faris on September 16, 2016, pursuant to notice.

James F. Evers, Esq., appeared on behalf of Plaintiff State of Hawaii Office of

Consumer Protection ("OCP"), and Defendant Anabel Gasmen Cabebe ("Cabebe") appeared *pro se*.

Based on the record, there is no genuine dispute concerning the following

## FINDINGS OF FACT:

1.     Cabebe and others, including Anthony Williams, operated a business in Hawaii known as Mortgage Enterprise Investments, Inc., or Mortgage Enterprise Investments ("MEI"). Cabebe claimed that MEI was overseen by the Common Law Office of America ("CLOA"), for which she claimed she served as a deputy private attorney general and Williams served as a private attorney general.

2.     Cabebe offered MEI's services to consumers who used it primarily for personal, family, or household purposes.

3.     Cabebe claimed that MEI was a mortgage reduction service that was guaranteed to cut in half their mortgage loan balances, monthly loan payment, and loan term.

4.     At all times, Cabebe operated MEI with the intent and purpose of defrauding consumers.

5.     Cabebe created and distributed to prospective consumers, standard MEI forms, which included a "Statutory Short Form Power of Attorney," a "Homeowner Service Guarantee Agreement," and a "Foreclosure Disclosure Terms and Conditions" sheet.

6.  Cabebe misrepresented to prospective consumers that MEI guaranteed its

2

ability to both secure a monthly mortgage service payment that is one-half of the homeowner's current mortgage payment as well as reduce the homeowner's current mortgage loan pay-off by one-half.

7.    Cabebe misrepresented to prospective consumers that because of the guarantee, there was "no risk" to MEI's service, if it was unsuccessful at reducing the current mortgage loan payment.

8.    Cabebe also misrepresented to prospective consumers that MEI stood behind its guarantee because it had a "rock solid proven method" of reducing mortgages, which "yielded a 100% success rate."

9.    Cabebe misrepresented to prospective consumers that their current mortgages would be rendered invalid and unenforceable, if they used MEI's mortgage reduction services.

10.    To convince prospective consumers that MEI's mortgage reduction services was legitimate, MEI recorded, at the Bureau of Conveyance of the State of Hawaii ("Bureau"), a mortgage created in favor of MEI or a financing statement.

11.    The mortgages and financing statements that were filed at the Bureau by Cabebe provided that any prior recorded mortgage against a consumer's property was discharged.

12.    The financing statements and mortgages recorded at the Bureau by MEI were not supported by a loan or other consideration.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 3 of 28

13.     Cabebe filed these mortgages and financing statements at the Bureau with the intent and purpose of misleading MEI consumers into believing that MEI was providing a legitimate service that would affect the validity and enforceability of mortgages held by prior mortgage lenders.

14.     After recordation of the financing statement or mortgage in favor of MEI, Cabebe instructed MEI consumers to make all future monthly mortgage to MEI in an amount equal to one-half of the original mortgage payment. This gave the appearance that the original mortgages were reduced in half.

15.     The consumers of MEI justifiably relied on the representations made by Cabebe. The consumers did not know, and had no reason to suspect, that those representations were false.

16.     Many consumers of MEI paid for the mortgage reduction service in advance and many made monthly mortgage payments directly to MEI.

17.     The original mortgage lenders never approved modification or reduction of the loan balances, the monthly payments, or the terms of the loan.

18.     The use of MEI's mortgage reduction service did not modify or reduce the original mortgage loan or the monthly payments.

19.     Many of MEI's consumers received delinquent notices or had their homes foreclosed upon by the original mortgage lenders.

20.     Cabebe also operated another mortgage reduction service business in Hawaii called Mortgage Enterprise ("ME").

4

21.    Cabebe operated ME with the assistance of Henry Malinay and others.

22.    Cabebe was a signatory on ME bank accounts at JPMorgan Chase Bank, Wells Fargo Bank and Union Bank.

23.    ME held itself out as a joint venture.

24.    Using MEI's forms, Cabebe created identical forms for ME.

25.    Cabebe offered similar services to ME's prospective consumers as she did with MEI's prospective consumers.

26.    Cabebe offered ME's services to consumers who used it primarily for personal, family, or household purposes.

27.    Cabebe claimed that ME was a mortgage reduction service that was guaranteed to cut in half consumers' mortgage loan balances, monthly loan payments, and loan terms.

28.    At all times, Cabebe operated ME with the intent and purpose of defrauding consumers.

29.    Cabebe misrepresented to prospective consumers that ME guaranteed its ability to both secure a monthly mortgage service payment that was one-half of the homeowner's current mortgage payments as well as reduce the homeowner's current mortgage pay-off by one-half, with a 100% money back guarantee.

30.    To convince prospective consumers that ME's mortgage reduction service was legitimate, Cabebe had prospective customers sign a "Customer Information" form, a "Homeowners Service Guarantee Agreement," "Statutory

5

Short Form Power of Attorney," "Foreclosure Disclosure Terms and Conditions" agreement, and a "ME Insurance and Tax Disclaimer" form.

31.     Cabebe notarized many of the ME documents signed by consumers and charged consumers notary service fees.

32.     Financing statements were also recorded at the Bureau to give the consumer the impression of ME's legitimacy.  The financing statements filed at the Bureau provided that any prior recorded mortgages against a consumer's property were discharged.

33.     The financing statements recorded at the Bureau by ME were not supported by a loan or other consideration.

34.     Cabebe filed these financing statements at the Bureau with the intent and purpose of misleading ME consumers into believing that ME was providing a legitimate service that would affect the validity and enforceability of mortgages held by prior mortgage lenders.

35.     ME consumers were instructed not to pay their original mortgage lenders.

36.     The original mortgage lenders of ME consumers never approved modification or reduction of the loan balances, the monthly payments, or the terms of the loan.

37.     The use of ME's mortgage reduction services did not modify or reduce the original mortgage loan or the monthly payments.

6

38. Cabebe received funds from ME's bank accounts, which held deposited money from consumers.

39. Cabebe also deposited funds from consumers directly into her personal bank account.

40. Many ME consumers received delinquency notices or had their homes foreclosed upon by the original mortgage lenders.

41. Consumers filed complaints with OCP and identified Cabebe as one of the perpetrators involved in the ME scheme to defraud consumers.

42. Several state court lawsuits were filed against Cabebe by consumers.

43. The following consumers paid the following amounts for the bogus mortgage reduction service:

    a.    Consumer Sally Haber Pico, OCP Case No. 2014-972, paid $2,900 for the mortgage reduction service.

    b.    Consumer Rodrigo Simon, OCP Case No. 2014-335, paid $3,900 for the mortgage reduction service.

    c.    Consumer Hilaria F. Taborada, OCP Case No. 2014-300, paid $4,000 for the mortgage reduction service.

    d.    Consumer Romeo Lopez, OCP Case No. 2014-795, paid $3,400 for the mortgage reduction service.

    e.    Consumer Prima Gijal, OCP Case No. 2013-675, paid $2,450 for the mortgage reduction service.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed 10/05/16   Page 7 of 28

f.        Consumer Marites C. Quedding, OCP Case No. 2013-673, paid $2,950 for the mortgage reduction service.

g.        Consumer Margarita Barut, OCP Case No. 2013-748, paid $1,500 for the mortgage reduction service.

h.        Consumers Reina M. Mata & Robert Mata, OCP Case No. 2014-816, paid $3,100 for the mortgage reduction service.

i.        Consumers Ceasar Lizada & Luz Lizada (re East Lipoa St.), OCP Case No. 2014-321A, paid $4,300 for the mortgage reduction service.

j.        Consumers Loreto B. Callos & Clarita R. Callos, OCP Case No. 2014-320, paid $5,500 for the mortgage reduction service.

k.        Consumers Loreto B. Callos & Jusepina B. Callos, OCP Case No. 2014-302, paid $3,300 for the mortgage reduction service.

l.        Consumer Froilan Lagazo, OCP Case No. 2014-304, paid $3,500 for the mortgage reduction service.

m.        Consumers Rudy Gazmen & Bessie Gazmen, OCP Case No. 2014-760, paid $4,500 for the mortgage reduction service.

n.        Consumers Ceasar Lizada & Luz Lizada (re Huaka St.), OCP Case No. 2014-321B, paid $4,000 for the mortgage reduction service.

o.        Consumer Felicitas C. Pasion, OCP Case No. 2014-765, paid $4,300 for the mortgage reduction service.

p.        Consumers Elvira Y. Andaya & Larry C. Andaya Sr., OCP

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 8 of 28

Case No. 2015-49, paid $4,050 for the mortgage reduction service.

      q.      Consumer Nelia A. Fabella, OCP Case No. 2014-825, paid $4,050 for the mortgage reduction service.

      r.      Consumers Gudencia Simon & Herminio Simon, OCP Case No. 2014-431, paid $3,900 for the mortgage reduction service.

      s.      Consumer Rosario L. Kalb, OCP Case No. 2014-287, paid $3,900 for the mortgage reduction service.

      t.      Consumers Antonio Palacio & Enriqueta Palacio, OCP Case No. 2014-430, paid $4,500 for the mortgage reduction service.

      u.      Consumers Zenaida & Rogelio Magbual, OCP Case No. 2015-0681, paid $3,300.00 for the mortgage reduction service.

      v.      Consumers Wengie & Danilo & Macrina Pillos, OCP Case No. 2015-0774, paid $8,080 for the mortgage reduction service.

      w.      Consumer Josephine Leano, OCP Case No. 2015-0702, paid $4,400 for the mortgage reduction service.

      x.      Consumers Eleonor & Esmenio Sabas, OCP Case No. 2015-0376, paid $4,099 for the mortgage reduction service.

      y.      Consumer Riza Magsayo, OCP Case No. 2015-0257, paid $3,350 for the mortgage reduction service.

      z.      Consumer Avelina Laurel, OCP Case No. 2015-0317, paid $4,950 for the mortgage reduction service.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 9 of 28

aa.     Consumer Nida & Elmer Gajonera, OCP Case No. 2015-0511, paid $3,500 for the mortgage reduction service.

bb.     Consumer Zenaida Webb, OCP Case No. 2015-0311, paid $4,750 for the mortgage reduction service.

cc.     Consumer Violeta Natividad, OCP Case No. 2015-0315, paid $2,450 for the mortgage reduction service.

dd.     Consumers Norma & Claro Romero, OCP Case No. 2015-0389, paid $9,400.00 for the mortgage reduction service.

ee.     Consumer Josefina Lucena, OCP Case No. 2015-0729, paid $8,750 for the mortgage reduction service.

ff.     Consumers Florencia & Ernesto Pasalo, OCP Case No. 2015-0260, paid $2,700 for the mortgage reduction service.

gg.     Consumer Remedios Oamil, OCP Case No. 2016-0189, paid $3,500.00 for the mortgage reduction service.

hh.     Consumer Herme Pastana, OCP Case No. 2016-0337, paid $3,275.00 for the mortgage reduction service.

ii.     Consumer Milah Ventura, OCP Case No. 2016-0335, paid $3,500.00 for the mortgage reduction service.

jj.     Consumer Patricia Nicolas, OCP Case No. 2016-0334, paid $21,706.40 for the mortgage reduction service.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed 10/05/16   Page 10 of 28

44.    On November 28, 2015, Cabebe filed a voluntary petition seeking relief under chapter 13.  The case was subsequently converted to chapter 7 by a conversion order entered on March 31, 2016.

45.    On February 22, 2016, OCP commenced this adversary proceeding against Cabebe.

46.    On March 24, 2016, Cabebe answered the complaint. Her answer denied all of the allegations of the complaint and invoked "her Fifth Amendment right against self-incrimination as to all [of] the allegations contained in the Complaint."

47.    At the continued first meeting of creditors held on June 14, 2016, Cabebe testified that the financing statements and mortgages prepared as part of the mortgage reduction service and filed at the Bureau were not supported by any consideration and were bogus.

48.    On August 4, 2016, OCP filed its motion for summary judgment.

49.    Cabebe filed a declaration August 30, 2016, opposing the motion for summary judgment.

50.    The declaration in opposition, filed by Cabebe, contained no supporting evidence but mainly argued that the consumers' claims should be adjudicated in state court, and that the consumers "transacted with other people like Henry Malinay, Angie Pasion, Rowena Valdez, Zeny Magbual and other people initially.  So everything involve [sic] other people who should be at fault."

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 11 of 28

51.     Cabebe did not defend the mortgage reduction service, did not show how the service ever worked to successfully reduce a consumer's original mortgage loan, did not deny her involvement in MEI as a deputy private attorney general, did not deny she was a signatory on the ME bank accounts, did not deny notarizing many of the documents prepared by the service, did not deny being partners with Henry Malinay and others, did not deny her receipt of money generated by the service, did not deny she sometimes directly deposited into her personal bank account money from consumers who purchased the mortgage reduction service, and did not deny her attempts to conceal her involvement in operating the service as both MEI and ME.

Based on these findings of fact, I draw the following

## CONCLUSIONS OF LAW

### I.     Jurisdiction and Venue

1.     The bankruptcy court has personal and subject matter jurisdiction.[1] This is a core proceeding.[2]  The bankruptcy court has statutory and constitutional power to enter a final judgment in this adversary proceeding.  Venue is proper in this district.[3]

---

[1] 28 U.S.C. §§ 1334 and 157, 11 U.S.C. §§ 1328(a)(2), 523(a)(2)(A), 523(a)(7) and Fed. R. Bankr. P. Rule 7001.

[2] 28 U.S.C. § 157(b)(2)(A), (I) and (O).

[3] 28 U.S.C. §§ 1408 and 1409.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 12 of 28

2. The bankruptcy court has the power to determine whether OCP's claims are nondischargeable and to enter judgment on those claims,[4] including monetary and injunctive relief.[5]

## II. OCP's Standing

3. OCP has standing to assert the claims set forth in this adversary proceeding. State law authorizes OCP to investigate reported or suspected violations of laws enacted and rules adopted for the purpose of consumer protection, and to enforce such laws and rules by bringing civil actions or proceedings.[6] OCP also has statutory authority to obtain restitution on behalf of consumers[7] and to obtain injunctive relief to enjoin any unlawful act or practice affecting consumers, trade, or commerce.[8]

4. OCP has authority to bring suit seeking a determination of nondischargeability on its own behalf as well as on behalf of consumers, just as the Federal Trade Commission, OCP's federal counterpart, has standing to enforce the

---

[4] *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038 (9th Cir. 2014).

[5] *Idaho v. Edwards (In re Edwards),* 233 B.R. 461, 478-79 (Bankr. D. Idaho 1999).

[6] Haw. Rev. Stat. § 487-5.

[7] Haw. Rev. Stat. § 487-14.

[8] Haw. Rev. Stat. § 487-15.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed 10/05/16   Page 13 of 28

Federal Trade Commission Act in nondischargeability actions,[9] and other state consumer protection divisions have standing to bring nondischargeability actions.[10]

## III. Summary Judgment Standard

5.    Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial.[12] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[13] In making this determination, the court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in favor of the nonmoving party. Where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.[14]

## IV. The Fifth Amendment Privilege and the Negative Inference

---

[9] *Hawaii Community Federal Credit Union v. Keka*, 94 Haw. 213, 228 (2000).

[10] *Edmond v. Consumer Protection Div. of Atty. Gen. of Maryland (In re Edmond),* 934 F.2d 1304 (4th Cir. 1991).

[11] Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056.

[12] *Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir. 1997).

[13] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[14] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).*

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed 10/05/16   Page 14 of 28

6.      The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ."[15]

7.      Notwithstanding that the privilege is expressly limited to the criminal context, it can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory,[16] and it may be asserted in bankruptcy cases.[17]

8.      "Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof."[18]

9.      A court may draw an adverse inference if "there is independent evidence of the fact about which the witness refuses to testify" and "there is a substantial need for the information and there is not another less burdensome way of obtaining that information."[19]

10.     OCP's motion for summary judgment rests upon sufficiently corroborated factual allegations. There is a substantial need for information about Cabebe's involvement in the scheme and no less burdensome way of obtaining information about Cabebe's role and intentions.

---

[15]  U.S. Const. amend. V.

[16]  *Kastigar v. United States,* 406 U.S. 441, 444 (1972).

[17]  *In re National Audit Defense Network,* 367 B.R. 207, 216 (Bankr. D. Nev. 2007).

[18]  *S.E.C. v. Colello,* 139 F.3d 674, 677 (9th Cir. 1998).

[19]  *Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903, 911–12 (9th Cir. 2008).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed 10/05/16   Page 15 of 28

11. The negative inference permissibly drawn from Cabebe's assertion of her Fifth Amendment privilege serves to establish and confirm her involvement in MEI's and ME's fraudulent scheme.

## V. Partial Waiver of the Fifth Amendment Privilege

12. Once a witness testifies, she may not invoke the privilege so as to shield that testimony from scrutiny. "To allow her to do so would constitute 'a positive invitation to mutilate the truth.'"[20] The privilege is thus waived to the extent testimony is given.[21]

13. When Cabebe testified that the financing statements and mortgages filed by MEI and ME were bogus, she waived the right to assert her Fifth Amendment privilege concerning all of OCP's allegations of fraud.

## VI. Unfair or Deceptive Acts or Practices

14. In Hawaii, "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."[22]

15. In Hawaii, an act is deceptive if it is "'(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the

---

[20] *United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir. 1990) *(*citing *Lawson v. Murray,* 837 F.3d 653, 565 quoting Brown v. United States,* 356 U.S. 148, 155-56 (1958)).

[21] *Rogers v. U.S.,* 340 U.S. 367, 373 (1951).

[22] *Hawaii Comm. Fed. Credit Union*, 94 Haw. at 229 .

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 16 of 28

circumstances where (3) the representation, omission, or practice is material.'"[23]   A representation, omission, or practice is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product."[24]   The test "is an objective one, turning on whether the act or omission 'is likely to mislead consumers,' . . . as to information 'important to consumers' in making a decision regarding the product or service."[25]

16.   The language of Haw. Rev. Stat. § 480-2(a) is intentionally broad to take into account the impossibility of formulating definitions to embrace all unlawful business practices,[26]  as "[t]here is no limit to human inventiveness in this field."[27]

17.   Courts enforcing Hawaii's law prohibiting unfair or deceptive acts or practices are obligated to look to interpretations, by the Federal Trade Commission and the federal courts, of Haw. Rev. Stat. § 480-2(a)'s federal counterpart, codified at 15 U.S.C. § 45(a)(1),[28] "as a guide to interpreting HRS ch. 480."[29]

---

[23] *Courbat v. Dahana Ranch, Inc*., 111 Haw. 254, 261 (2006).

[24] *Id.*

[25] *Id.*

[26] *Cieri v. Leticia Query Realty, Inc*., 80 Haw. 54, 61 (1995).

[27] *F.T.C. v. Sperry & Hutchinson Co.,* 405 U.S. 233, 240 (1972).

[28] Haw. Rev. Stat. § 480-2(b).

[29] *Courbat v. Dahana Ranch, Inc.,* 111 Haw. at 262.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed 10/05/16   Page 17 of 28

18.    Cabebe's misrepresentations and omissions to consumers, in furtherance of the mortgage reduction scam operating as MEI or ME, offend established public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, and constitute a series of separate and independent unfair acts or practices in the conduct of any trade or commerce, in violation of Haw. Rev. Stat. § 480-2(a).

19.    Cabebe's misrepresentations and omissions to consumers in furtherance of the mortgage reduction scam operated as MEI or ME were material and were likely to mislead consumers acting reasonably under the circumstances, in violation of Haw. Rev. Stat. §480-2(a).

20.    A company that sells a service based upon promised results that the company is unable to legitimately provide violates the prohibition of unfair or deceptive acts and practices.[30]  Even merely overstating to consumers the likelihood of obtaining certain benefits violates the prohibition of unfair or deceptive acts or practices.[31]

21.    The mortgage reduction service operated by Cabebe as MEI and ME violates Hawaii's prohibition of unfair or deceptive acts and practices.

---

[30]  *F.T.C. v. RCA Credit Services, LLC*, 727 F.Supp.2d 1320 (M.D. Fla. 2010) (interpreting the federal counterpart to Haw. Rev. Stat. § 480-2(a)).

[31]  *F.T.C. v. Washington Data Resources,* 856 F.Supp.2d 1247 (M.D. Fla. 2012) (interpreting the federal counterpart of Haw. Rev. Stat. § 480-2(a)).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 18 of 28

22.     Because the mortgage reduction service is a sham, the agreements between MEI/ME and the consumers are void and unenforceable at law or in equity.[32]  Consumers in this case are entitled to restitution, declaratory relief, and injunctive relief.[33]

23.     Consumers are entitled to restitution in order to recover all monies paid for the service, including advance fees and any monthly MEI and ME mortgage payments. OCP's consumer-complainants are entitled to recover from Cabebe a total of $164,010.40.

24.     In addition to being liable to pay restitution, any person violating any provision of Haw. Rev. Stat. § 480-2 "shall be fined a sum of not less than $500 nor more than $10,000 for each violation."[34]  Such fines are calculated per violation and per day, and are cumulative to the remedies or penalties under all other laws.[35]

25.     OCP's request that the Court award fines and penalties per consumer, rather than per violation or per day, is reasonable.

26.     For her involvement in the unfair and deceptive conduct that occurred as part of the operation of the scheme, OCP is awarded non-compensatory fines and

---

[32]  Haw. Rev. Stat. §§ 480-12 and 480e-11.

[33]  *Id.*

[34]  Haw Rev. Stat. § 480-3.1 .

[35]  *Id.*

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed 10/05/16   Page 19 of 28

penalties against Cabebe in the amount of $164,010.40 in addition to the restitution award set forth above.

## VII. Common Law Fraud

27.    Cabebe's repeated and flagrant violations of applicable consumer protection laws constitute common law fraud.

28.    To establish common law fraud, the plaintiff must prove by clear and convincing evidence that the defendant made false representations of material fact, intended to induce the consumers to act, the representations were made with knowledge of, or reckless disregard for, their falsity, and the consumers justifiably relied upon those false representations to their detriment, resulting in the consumers suffering substantial pecuniary damage.[36]

29.    These elements have been satisfied in this case.

## VIII. Nondischargeability under 11 U.S.C. § 523(a)(2)(A)

30.    OCP is entitled to a determination of nondischargeability of the consumers' restitution claims under 11 U.S.C. § 523(a)(2)(A).

31.    To prevail on its nondischargeability claim under 11 U.S.C. § 523(a)(2)(A), OCP must show five things: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable

_____

[36] *Bulgo v. Munoz*, 853 F.2d 710, 716 (9th Cir. 1988).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 20 of 28

reliance on the debtor's statement or conduct; and (5) damage proximately caused by the reliance on the debtor's statement or conduct.[37]

32.    Because the mortgage loan reduction service was ineffective, essentially all of the representations made by Cabebe, MEI, and ME about the service were false.

33.    It was impossible for anyone other than the mortgage lender to reduce mortgage debts unilaterally.  If mortgage loan balances were to be cut in half, consent from lenders would have been needed, but Cabebe, MEI, and ME neither sought nor obtained such consent.

34.    The MEI and ME mortgage and financing statements filed in the Bureau are akin to bogus satisfaction of mortgage documents that are void and ineffectual.[38]  This is particularly true since financing statements are a product of the Uniform Commercial Code, which does not apply to mortgages and other interests in real property.[39]

---

[37] *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman),* 234 F.3d 1081, 1085 (9th Cir. 2000).

[38]  *Ocwen Loan Servicing, LLC v. Lum,* 2015 WL 1808955 *5 (D. Haw. April 20, 2015) (a mortgage is void if there if fraud in the factum, which goes to the nature of the document itself).

[39]  *Bank of Hawaii v. Davis Radio Sales & Service, Inc.,* 6 Haw. App. 469, 479 (1986).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed 10/05/16   Page 21 of 28

35.     The MEI and ME financing statements, and the MEI mortgages, filed at the Bureau were not supported by any loan or any other consideration and are bogus and void.

36.     The service could not provide the results promised to consumers, yet Cabebe and the other participants in the MEI and ME ventures misled consumers to think otherwise.  Such conduct is actionable as fraud under state law.[40]

37.     The consumers justifiably relied on Cabebe's, MEI's, and ME's representations. Both the MEI and the ME paperwork indicates the service is risk free, has a success rate of 100%, and is backed by the guarantee of full refunds.  The consumers were justified in believing those statements and acting as they did.

38.     Also contributing to the believability of the service was the use of notaries public for the notarization of consumers' signatures on the MEI or ME paperwork.  Cabebe was such a notary, and notarized nearly all of the documents executed on Oahu.

39.     Contributing to the consumers' justifiable reliance in purchasing MEI's service was their belief that they were retaining legal representation.  The service was to be provided by private attorney generals from the CLOA.  The inclusion of "Law Office" as part of CLOA's name clearly fostered the belief that CLOA was an office of real attorneys.  The oversight of alleged attorneys, and the use of legal-

---

[40] *U.S. Bank Nat. Ass'n v. Salvacion*, 134 Haw. 170, 173-74 (2014).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 22 of 28

looking forms to be filed in the Bureau, all contributed to the impression that the mortgage reduction service was legitimate. The targeted consumers cannot be expected to second-guess legal advice, legal services, and legal forms provided by what looked like a legitimate law office.[41]

40. Contributing to the consumers' justifiable reliance in purchasing ME's service was the fact that those operating the service, including Cabebe, used the service to file bogus financing statements against their own properties. The implicit message to consumers was "of course the service works; I'm using it and I'm still in my home." Such conduct was intended to create and foster a false impression that the service actually worked to reduce mortgage loan balances, when Cabebe knew that was not the case. This conduct constitutes the type of false pretense that renders debt nondischargeable under 11 U.S.C. § 523(a)(2)(A).[42]

41. Fraudulent intent may be inferred for purposes of 11 U.S.C. § 523(a)(2)(A)[43], including from surrounding circumstances,[44] and that is appropriate in this case.

---

[41] *U.S. v. Boyle,* 469 U.S. 241, 251 (1985).

[42] *Takazawa v. Higashi (In re Higashi),* 553 B.R. 152 (Bankr. D. Haw. 2016)

[43] *Citibank (South Dakota), N.A. v. Eashai (In re Eashai),* 87 F.3d 1082, 1087-88 (9th Cir.1996).

[44] *Cowen v. Kennedy (In re Kennedy*), 108 F.3d 1015, 1018 (9th Cir. 1997).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 23 of 28

42.     Cabebe had no means or intention to deliver on the promise of cutting mortgage loan balances by one-half, and Cabebe knew she had no means or intention to deliver on that promise.

43.     As the service was a fraud in that the service was incapable of reducing anyone's mortgage, the standard for nondischargeability under 11 U.S.C. § 523(a)(2)(A) is met.[45]

44.     Even if Cabebe did not receive all of the money derived from the scheme, this is not a defense and does not lessen her exposure to repay consumers for their damages.   Section 523(a)(2)(A) "prevents the discharge of all liability arising from fraud" and is not limited to the amount of benefit received by the debtor.[46]

## IX.     Nondischargeability under 11 U.S.C. § 523(a)(7)

45.     The non-compensatory fines and penalties are awarded to OCP are categorically nondischargeable under the Bankruptcy Code.[47]

## X.     Declaratory Relief

46.     OCP requests that the court enter declaratory relief voiding all of the promissory notes, mortgages, and financing statements made by consumers in favor

---

[45] *Rubin v. West (In re Rubin),* 875 F.2d 755, 759 (9th Cir.1989).

[46] *Cohen v. de la Cruz*, 523 U.S. 215, 223 (1998).

[47] 11 U.S.C. § 523(a)(7).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 24 of 28

of MEI or ME. There is no doubt that all such filings are bogus and fraudulent. But MEI and ME are not named defendants in this case. Even if MEI or ME was a general partnership and not a corporation or other entity, the court is unwilling, without further legal explanation from OCP, to grant declaratory relief against entities that have not been named or served in this adversary proceeding.

## XI. Permanent Injunctive Relief

47.     Cabebe was acting as a "distressed property consultant" ("Consultant") and targeting owners of "distressed property" as those terms are defined in Haw. Rev. Stat. § 480E-2, to the extent Cabebe recruited consumers who, at the time, owned residential property that: (1) was in foreclosure, or at risk of foreclosure because payment on any loan secured by residential property was more than sixty days delinquent, (2) had a lien or encumbrance charged against it because of nonpayment of any taxes, lease assessments, association fees, or maintenance fees, (3) was at risk of having a lien or encumbrance changed against it because the payment of any taxes, lease assessments, association fees, or maintenance fees was more than ninety days delinquent, (4) secured a loan for which notice of default had been given, or (5) secured a loan that had been accelerated.  In any of these scenarios, the consumers were considered owners of "distressed property" who were entitled to the protections of Haw. Rev. Stat. Chapter 480E.

25

48.     As a Consultant, Cabebe is and was at all times relevant herein subject to the requirements and prohibitions applicable to Consultants pursuant to Haw. Rev. Stat. Chapter 480E.

49.     In her operation of MEI and ME, Cabebe failed to comply with the requirements and prohibitions applicable to Consultants pursuant to Haw. Rev. Stat. Chapter 480E in numerous respects, including but not limited to: (i) failing to use written contracts for the services to be provided, failing to discharge all services to be performed, and failing to disclose the compensation to be received by the Consultant (all as required by Haw. Rev. Stat. § 480E-3), (ii) failing to notify consumers in writing of their right to rescind any agreement, failing to use the precise language required by statute, and failing to use the required cancellation form (all as required by Haw. Rev. Stat. § 480E-4), (iii) misrepresenting or concealing material facts (prohibited by Haw. Rev. Stat. § 480E-10(a)(1)), (iv) failing to identify and describe the services to be performed (as required by Haw. Rev. Stat. § 480E-10(a)(4)), (v) receiving compensation before fully performing (prohibited by Haw. Rev. Stat. § 480E-10(a)(6)), and (vi) receiving compensation in excess of the statutory maximum (in violation of Haw. Rev. Stat. § 480E-10(a)(7)).

50.     As a result, Cabebe is permanently enjoined from acting as a Consultant in the future.

51.     Cabebe was also a "Provider" of a "Mortgage Assistance Relief Service," as those terms are defined in 12 C.F.R. Part 1015 (the "MARS Rule")

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 26 of 28

§ 1015.2, and as such was, at all times, required to comply with the MARS Rule.

52.    Cabebe violated MARS Rule § 1015.5(a) by both requesting and receiving advance fees from consumers.

53.    Cabebe committed further violations of the MARS Rule by misrepresenting to consumers the likelihood of obtaining the desired relief (MARS Rule § 1015.3(b)(1)), misrepresenting to consumers the term or conditions under which they could obtain refunds (MARS Rule § 1015.3(b)(6)), misrepresenting to consumers that the service had been completed (MARS Rule § 1015.3(b)(7)), misrepresenting to consumers that they will receive legal representation (MARS Rule § 1015.3(b)(8)), misrepresenting to consumers the percentage of debt that will be saved through the service (MARS Rule § 1015.3(b)(10)), and providing substantial assistance or support to a service provider knowing the provider is engaged in acts or practices which violate the MARS Rule (MARS Rule § 1015.3(b)(10)), and failing to keep numerous categories of records for two years (MARS Rule § 1015.9).

54.    As a result, Cabebe is permanently enjoined from acting as a Provider in the future.

55.    Cabebe has also engaged in professional misconduct sufficient to warrant the revocation, suspension, or denial of her status as a notary public in the State of Hawaii.

56.    Cabebe is permanently enjoined from serving as a notary public in the

U.S. Bankruptcy Court - Hawaii  #16-90011  Dkt # 25  Filed  10/05/16  Page 27 of 28

State of Hawaii.

**END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 25   Filed  10/05/16   Page 28 of 28