James F. Evers   HI State Bar No. 5304
State of Hawaii Office of Consumer Protection
235 S. Beretania Street, Room 801
Honolulu, Hawaii 96813
Phone: (808) 586-5980
E-Mail: jevers@dcca.hawaii.gov

Attorney for STATE OF HAWAII
OFFICE OF CONSUMER PROTECTION

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re: | ) | Case No. 15-01446 |
| | ) | Chapter 7 |
| ANABEL GASMEN CABEBE, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| STATE OF HAWAII, by its OFFICE | ) | Adv. Pro. No. 16-90011 |
| OF CONSUMER PROTECTION, | ) | |
| | ) | *Related Document No. 79* |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANABEL GASMEN CABEBE, | ) | |
| MORTGAGE ENTERPRISE, | ) | |
| MORTGAGE ENTERPRISE | ) | |
| INVESTMENTS, and MORTGAGE | ) | |
| ENTERPRISES INVESTMENTS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION
## TO ANTHONY WILLIAMS' MOTION
## TO SET ASIDE DEFAULT/DEFAULT JUDGMENT

The State of Hawaii Office of Consumer Protection ("OCP") hereby submits its memorandum in opposition to the position papers (Adv. Dkt #79) filed by Anthony Williams ("Williams") opposing entry of default, and being treated by the Court as a motion to set aside default judgment (Adv. Dkt #82). The motion essentially seeks relief only as to Mortgage Enterprise Investments ("MEI"). Williams' concedes that Mortgage Enterprise ("ME") engaged in fraud, but contends he was unaware that the agents of MEI, serving as distressed property consultants, acted as they did in defrauding consumers.

OCP obtained summary judgment against Anabel Cabebe ("Cabebe"). Adv. Dkt #25. Cabebe acted as an agent of both MEI and ME. As long as the summary judgment stands, it is inconceivable that MEI could amount a defense in this action, and MEI is therefore presumably seeking to attack that judgment. That ruling is based, in part, on Cabebe's admission that MEI's filings in the State of Hawaii Bureau of Conveyances ("Bureau") are bogus. Adv. Dkt #25, p.11, ¶47.

<u>LEGAL STANDARD</u>

Fed. R. Civ. P. 55(c), made applicable herein by Fed. R. Bankr. P. 7055, provides that a court may set aside the entry of default upon a showing of good cause, or a default judgment under Fed. R. Civ. P. Rule 60(b). Fed. R. Civ. P. Rule 60(b), which by virtue of Bankruptcy Rule 9024 is applicable in bankruptcy, except in certain narrow instances not pertinent to the facts of the instant case, sets forth the limited circumstances under which relief from a judgment is appropriate. The Ninth

2

Circuit has stated that a district court may deny a motion to vacate a default judgment brought under Fed. R. Civ. P. Rule 60(b) if: (1) the plaintiff would be prejudiced if the judgment is set aside, (2) defendant has no meritorious defense, or (3) the defendant's culpable conduct led to the default. Hammer v. Drago (In re Hammer), 940 F.2d 524, 525–26 (9th Cir.1991). The court in Hammer further stated explicitly that "[t]his tripartite test is disjunctive," meaning that the district court would be free to deny the motion if any of the three factors was true. Id. at 526.

## ARGUMENT

The motion should be denied in its entirety on several grounds.

First, Williams is not a party to this action. It is therefore unnecessary for Williams to attempt to do anything on his own behalf, and he lacks standing to seek relief on behalf of MEI.

MEI can only appear and defend through counsel. Williams is not qualified to serve as MEI's counsel. See e.g. Rowland v. Cal. Men's Colony, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel," citing Osborn v. Bank of United States, 9 Wheat. 738, 22 U.S. 738 (1824)); United States v. High Country Broad. Co., 3 F.3d 1244, 1245 (9th Cir. 1993); Church of the New Testament v. United States, 783 F.2d 771, 772-73 (9th Cir. 1986); see also In re Am. West Airlines, 40 F.3d 1058, 1059 (9th Cir. 1994) (recognizing that corporations,

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 96   Filed 04/13/17   Page 3 of 38

partnerships and associations may not appear in federal court except through a licensed attorney).

Not only is Williams not qualified to serve as counsel for MEI, he has been enjoined from doing so by a state court order in an action filed against the Common Law Office of America ("CLOA")[1] to preclude the ongoing unauthorized practice of law by people like Williams and Hep Guinn. See Exhibit A.[2]

Second, the motion fails the Hammer test in all respects.

As to the first prong under Hammer, reproving the case means further delay, and delay at this point is prejudicial. At issue are bogus liens which remain on file

---

[1] As part of MEI's mortgage reduction scam, consumers were asked to sign a special power of attorney before a notary public appointing Anthony Williams, and others affiliated with CLOA, as their "attorney in fact." Anthony Williams is not an attorney at law, and typically concedes he is not an attorney at law, but claims his "attorney in fact" status, stemming from the CLOA power of attorney, gives him the same rights and powers as an attorney at law. The mortgage reduction scheme was designed to allow CLOA clients to defend foreclosure actions on the basis that the MEI filing(s) in the BOC discharged all prior mortgages. The consumers' lenders and servicers were instructed that because of CLOA's retention as attorney in fact, all future communications should be directed at CLOA, which helped keep consumers in the dark about the fraud being perpetrated by the fraudsters behind MEI. Consumers were led to believe they were retaining legal representation by the private attorney generals at CLOA. This belief was fostered by the inclusion of "Law Office" as part of CLOA's name which gave the appearance that CLOA was an office of real attorneys. The oversight of alleged attorneys, and the use of legal-looking forms, all contributed to the impression that MEI was legitimate.

[2] Also included within the scope of the permanent injunction is Hep Guinn, who acted as one of the so-called private attorney generals while working at CLOA. Guinn has appeared in the case as a "party in interest" and appears intent on attempting to mislead the Court into thinking she is not a mortgage rescue fraudster.

U.S. Bankruptcy Court - Hawaii  #16-90011  Dkt # 96  Filed 04/13/17  Page 4 of 38

in the Bureau of Conveyances of the State of Hawaii, and which expose innocent homeowners to the ongoing threat of foreclosure. In addition, the liens have attached to the proceeds from the sale of estate property. Until the disputed liens are resolved, this estate cannot be fully administered, and the consumer-victims cannot be paid on their restitution claims.

As to the second prong under Hammer, there is no defense to the fraudulent conduct at issue. Acting in the contemptuous, representative capacity as "attorney in fact for MEI and CLOA," Williams states "MEI and CLOA denies [sic] any and all assertions that their activities are fraudulent or that any homeowner was ever scammed using our service." Adv. Pro. No. 16-90011, Adv. Dkt #79, pp.1-2. A "mere general denial without facts to support it" is not enough to justify vacating a default or default judgment. Madsen v. Bumb, 419 F.2d 4, 6 (9th Cir.1969). Because Williams is not an attorney, technically his motion does not even constitute a general denial on behalf of MEI. In any event, it is disingenuous to try and attribute the fraud solely to ME and not MEI. Whether marketed and sold by MEI or ME, the mortgage reduction service was no less fraudulent. Consumers paid for a service that conferred no benefit. Bureau filings by MEI and ME are equally bogus. Cabebe has admitted the MEI filings in the Bureau are bogus. MEI offered the supposed expertise of legal representation. There was nothing legal about CLOA and its private attorney generals. CLOA has been adjudicated to be a fraud for having engaged in the unauthorized practice of law. See Exhibit A.

Williams claims MEI allowed its clients to remain in their homes during the foreclosure process. Adv. Pro. No. 16-90011, Adv. Dkt #79, pp.1-2. That would have been the case in any event. More importantly, Williams overlooks that the MEI business model is predicated on consumers paying for the service in advance, which is a felony.[3] There is no defense, which is fatal to the motion. See, e.g., <u>Madsen v. Bumb</u>, 419 F.2d 4, 6 (9th Cir.1969) (holding that the movant had to present the district court with specific facts that would constitute a defense to justify vacating a default judgment). Prolonging this case would merely give Williams new life in his ongoing attempts to make a mockery of the judicial system.[4]

As to the third prong under <u>Hammer</u>, no explanation is given as to why MEI failed to defend, despite service on numerous agents, including Cabebe. If a defendant "has received actual or constructive notice of the filing of the action and

_____

[3] With regard to the prohibitions applicable to MEI, Haw. Rev. Stat. § 480E-10(a)(6) provides that distressed property consultants shall not "[t]ake, ask for, claim, demand, charge, collect or receive any compensation until after the distressed property consultant has performed each service the distressed property consultant contracted to perform or represented would be performed," and violations of Haw. Rev. Stat. § 480E-10 are felonies pursuant to Haw. Rev. Stat. § 480E-12.

[4] Williams actually filed a complaint on behalf of the people of Hawaii against the State of Hawaii. The complaint was dismissed sua sponte by an order which found the complaint to be "a rambling collection of quotes interspersed with declarations regarding the failings of America and the U.S. Constitution," and which left the court feeling hard-pressed to find "an intelligible sentence. See <u>Exhibit B</u>. After the dismissal of that action Williams filed suit against himself. That is not a misprint, and is so fantastic it bears repeating – Williams filed suit against himself. See <u>Exhibit C</u>.

6

failed to answer," its conduct is culpable. <u>Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.</u>, 840 F.2d 685, 690 (9th Cir.1988) (quoting <u>Meadows v. Dominican Republic</u>, 817 F.2d 517, 521 (9th Cir.1987)). In the absence of any showing as to why MEI neglected to defend, MEI's conduct is inexcusable, and MEI is not be entitled to relief.

Based upon the record of this case, and for the reasons stated, Williams' motion for relief should be denied.

DATED: Honolulu, Hawaii, April 13, 2017.

/s/ James F. Evers
JAMES F. EVERS
Attorney for State of Hawaii
Office of Consumer Protection

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 96   Filed   04/13/17   Page 7 of 38

DOUGLAS S. CHIN                 6465
Attorney General of Hawai'i

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2016 SEP 28 PM 1:40

F. OTAKE
CLERK

DANIEL K. JACOB                 9524
BRYAN C. YEE                    4050
Deputy Attorneys General
Department of the Attorney General
State of Hawai'i
425 Queen Street
Honolulu, Hawai'i 96813
Telephone: (808) 586-1180

Attorneys for Plaintiff STATE OF HAWAI'I

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| STATE OF HAWAI'I, by DOUGLAS S. CHIN, as Attorney General of the State of Hawai'i, | CIVIL NO. 13-1-2484 (Other Civil Action, Injunctive Relief) |
| Plaintiff, | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING PLAINTIFF STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT, FILED ON JULY 22, 2016 |
| vs. | |
| ANTHONY WILLIAMS, MARY JEAN CASTILLO, HEP YANEZ GUINN, KENNETH MARVIN BYRD, COMMON LAW OFFICE OF AMERICA, DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100; DOE CORPORATIONS 1-100; DOE LLCS 1-100 and DOE ENTITIES 1-100, | Hearing Date: August 24, 2016 Time: 10:30 a.m. Judge: Honorable Edwin C. Nacino Trial Date: None |
| Defendants. | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING PLAINTIFF STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT, FILED ON JULY 22, 2016

Plaintiff STATE OF HAWAII's Motion for Summary Judgment, filed on July 22, 2016,

came on for hearing before the Honorable Edwin C. Nacino, Judge of the above-entitled Court,

on August 24, 2016. Deputy Attorney General Daniel K. Jacob appeared on behalf of the

EXHIBIT A

Plaintiff STATE OF HAWAI'I. No one appeared on behalf of any of the Defendants. No other parties or counsel appeared in the matter.

The Court having reviewed the materials in support of and finding no opposition to the instant motion from Defendants ANTHONY WILLIAMS ("WILLIAMS"), HEP YANEZ GUINN ("GUINN"), KENNETH MARVIN BYRD ("BYRD"), and COMMON LAW OFFICE OF AMERICA ("CLOA"), having heard oral arguments from the present parties, being fully advised in the premises and having taken judicial notice of the records and files in this instant civil number, and the Court having orally granted said motion, makes the following Findings of Fact and Conclusions of Law.

Based on the record, there is no genuine dispute concerning the following:

### FINDINGS OF FACT

1. CLOA is an estraz law firm, consisting of individuals claiming to be "Private Attorneys General," who hold themselves out as purveyors of legal and financial services to Hawai'i consumers.

2. WILLIAMS, GUINN, and BYRD have filed legal documents as "Private Attorneys General" on behalf of CLOA.

3. WILLIAMS represented that CLOA has lots of attorneys who handle foreclosure cases.

4. A website is maintained on behalf of CLOA at www.usacommonlaw.com.

5. The website for CLOA provides a phone number and office address for CLOA.

6. CLOA's website provides, "[t]he Common Law Office of America is dedicated to educating the American people on their constitutional rights and assisting them in exercising the same. Our well trained staff will treat your situation as if it is their own. Our mission is to

2

provide assistance to those who have been targeted unfairly by the criminal justice system and procure the best defense possible. Our office is unique in that we are one of the few offices that truly follows the constitution to the letter. We also assist home owners who are in foreclosure or need a reduction in their monthly payment."

7.      The website claims that CLOA can offer services in mortgage reduction, foreclosure assistance, IRS tax assistance, document writing, will preparation, estate planning, UCC filings, consulting, power of attorney, travel ID, and much more.

8.      On its website, CLOA provides that, "Private Attorney General Anthony Williams has been perfecting law since 2002. He has an unorthodox approach to law and champions the rights of the poor and the American people. His dedication to justice and truth is unparalleled and he is one such individual that holds our public servants accountable for their actions. Mr. Williams did his studies at Kaplan University and continued his own education through extensive and exhaustive research that has given him world wide recognition for being fearless in the courtroom and uncompromising in his principles of honesty, integrity, faith in Yahweh and service to the people. Mr. Williams has taken on the U.S. Government, FBI, Sheriff departments and State governments in defense of the rights of the American people."

9.      CLOA's website provides testimonials from its clients purporting to have had success with the Defendants' services.

10.     WILLIAMS is the owner and operator of CLOA.

11.     WILLIAMS is also the owner and operator of Mortgage Enterprise Investments ("MEI"), an entity that creates sham mortgages for clients under the ruse that the mortgage will void any prior existing mortgage on the clients' properties.

12. WILLIAMS personally holds himself out as a "Private Attorney General," who is able to practice law in the State of Hawaii, and offers services such as mortgage relief specialist and financial planner.

13. WILLIAMS possesses a badge that looks like a law enforcement badge and states Private Attorney General on it.

14. WILLIAMS has made numerous appearances in Hawaii courts purporting to represent Hawaii consumers.

15. Despite offering these services, WILLIAMS is not a licensed attorney or a licensed investment adviser.

16. WILLIAMS has continued to maintain a website on behalf of CLOA, which provides a phone number and mailing address for CLOA on said website.

17. WILLIAMS promises his clients that he will handle their foreclosure cases on their behalf.

18. WILLIAMS has charged Hawaii consumers money for his fraudulent services.

19. WILLIAMS also provided his clients with a Homeowners Guaranteed Services document, which indicates that consumers who are current with their payments to CLOA will be guaranteed the following services: wills; trust; power of attorney, tag de-registration, document review, document filing, phone calls on [their] behalf, common law marriage affidavits, common law divorce affidavits, common law birth affidavits, sovereign peace officer certification, expatriation, credit repair in relation to the mortgage, property taxes, credit repair, IRS taxes, and sovereignty certification.

4

20.     Consumers were told that WILLIAMS' services, by and through MEI and CLOA, would help cut the consumers' mortgages in half, or that the consumers' mortgages on their homes would be terminated.

21.     WILLIAMS would explain to his consumers that their current and lawful mortgage would be transferred to MEI from whichever bank the consumer was paying, and that CLOA would process the paperwork for them.

22.     WILLIAMS would not explain to his consumers in detail how his services would work, and most of the time people just assumed or trusted that he could perform the services.

23.     WILLIAMS, by and through MEI, would have his potential consumers fill out an application which requested information about the identity of the individuals and information regarding their mortgages.

24.     WILLIAMS would employ various individuals to recruit consumers for MEI and CLOA.

25.     Upon finding a consumer, agents of MEI and CLOA would have the consumer fill out an MEI application, and would also collect the initial payment for services from the consumers.

26.     After a consumer completed the initial application, the consumer is asked to complete a "Homeowner Service Guarantee Agreement".

27.     The Homeowner Service Guarantee Agreement is the contract between the client and WILLIAMS doing business as MEI.

28.     Upon signing the contract, the consumer agrees that they "understand what [MEI] guarantees is the ability to file on [their] behalf, the ("Homeowner") and secure a Mortgage Service Payment ("MSP") fee that is half of what [their] current mortgage payment is."

5

29.     In addition, the consumer "understands that there is an initial $1500 - $2000 file set-up fee in order to begin the process."

30.     Finally, the contract provides that the consumer "understand[s] that if [MEI] does not reduce [the consumers] monthly payment by one-half (1/2) of what [the consumer] is currently paying on [their] mortgage and does not reduce [their] current mortgage loan pay-off term by one-half (1/2) of [their] current pay-off obligation, MEI will fully refund [their] $1500 - $2000 initial file set-up fee if paid in full at the time of the initiation of [their] file."

31.     WILLIAMS would also provide his consumers with a power of attorney form which purported, after executed, to give WILLIAMS, BYRD, and GUINN the authority to act on their consumers' behalf pursuant to the "Tennessee Code Annotated section 34-6-101 to 34-6-111 and Hawaii Revised Statutes 551D (sic)."

32.     Generally, for the above services, WILLIAMS would charge an individual $1500 when a consumer's mortgage debt was below $400,000, and $2,000 when a consumer's mortgage debt was above $400,000.

33.     Consumers of WILLIAMS would pay by cash or check.

34.     As of July 22, 2016, the STATE was in possession of thirty-nine checks made out to MEI from thirty-eight different individuals totaling $40,289.26. One of the checks has "CLOA" in the lower left hand side of the check.

35.     Upon a consumer's application, execution of contract, and payment of fees, WILLIAMS would complete and file a UCC Financing Statement, and send a "RESPA Qualified Written Request, Complaint, Dispute of Debt & Validation of Debt Letter, TILA Request" ("RESPA") to the consumer's current mortgage holder.

6

36.     The UCC filing statement filed by WILLIAMS was used to show consumers that MEI had taken over the mortgage from the lawful mortgage holder.

37.     The RESPA document was intended to stop the current mortgage company from harassing the client.

38.     WILLIAMS would also mail out credit dispute letters on behalf of his consumers.

39.     WILLIAMS would instruct his clients to stop paying their mortgages and pay MEI and CLOA instead.

40.     The money received by WILLIAMS doing business as MEI was used to pay "residual income" to the agent of WILLIAMS who solicited the consumer.

41.     The solicitor of the consumer would be paid half of the initial fee charged to the consumer, and a portion of the monthly payments made to MEI.

42.     At one point, the State of Hawaii Bureau of Conveyances stopped accepting WILLIAMS' UCC filing statements.

43.     Macrina Pillos, Danilo Pillos, and Wengie Pillos (the "Pillos family") are consumers who engaged WILLIAMS' services.

44.     WILLIAMS promised the Pillos family that the mortgage foreclosure cases would be "gone" once WILLIAMS filed the appropriate paperwork.

45.     On behalf of the Pillos family, WILLIAMS filed a new mortgage on the Pillos family's home.

46.     The document filed by WILLIAMS provides that it "replaces and makes null and void the original Mortgage Instrument # A-45270266, recorded in the State of Hawaii, Bureau of Conveyances, and any other instrument preceding this document."

7

47.     The Pillos family began paying WILLIAMS $1,032.00 each month for his services, which was half of their $2,221.00 mortgage payment to Wells Fargo.

48.     After a certain amount of monthly payments, WILLIAMS told the Pillos family that their new mortgage with WILLIAMS had been paid off in full.

49.     WILLIAMS filed a UCC financing statement on the Pillos family's behalf which purported that the mortgage held by WILLIAMS had been paid off in full.

50.     On September 18, 2015, the Pillos family received a letter from Wells Fargo and a foreclosure commissioner which indicated that the Pillos familys' home would be sold in an auction.

51.     The Pillos family believes they have been defrauded.

52.     Arnold S. Ancheta, Gloria T. Ancheta, and Marlet M. Ancheta (the "Ancheta family") are consumers who engaged WILLIAMS' services.

53.     WILLIAMS promised the Ancheta family that his services could reduce their mortgage and cut off their loan by filing the appropriate paperwork.

54.     The Ancheta family began paying WILLIAMS each month for his services.

55.     WILLIAMS' services did not work for the Ancheta family, and they are now in the risk of foreclosure.

56.     GUINN personally holds herself out as a "Private Attorney General," who is able to practice law in the State of Hawaii, and offers legal services to Hawaii consumers facing mortgage foreclosures.

57.     GUINN has made numerous appearances in Hawaii courts purporting to represent Hawaii consumers.

58.     Despite offering these services, GUINN is not a licensed attorney.

8

59.    GUINN operates HYL Consultants, LLC ("HYL").

60.    GUINN used the names Guinn and Lusica interchangeably.

61.    HYL is a mortgage consulting company offering foreclosure rescue assistance that allegedly provides its clients with free and clear titles to their homes.

62.    GUINN obtains clients facing mortgage foreclosure primarily through word of mouth.

63.    GUINN has approximately 300 clients, most of them being Filipino.

64.    GUINN, after a falling out with WILLIAMS, stole documents from WILLIAMS to use in her mortgage consulting business.

65.    GUINN requires her clients to execute a contract and make an initial payment before rendering her services.

66.    GUINN would promise to save her clients' houses if they signed her contract and made payment for her services.

67.    After clients signed the initial contract, GUINN would have anywhere from five to twenty pieces of paper that were blank, but provided a single signature line at the bottom of the page which she required clients to sign.

68.    These blank signature documents would later be used by GUINN to attach to the back of legal documents GUINN prepared on her clients' behalf.

69.    Having the clients sign the five to twenty blank pages with signature lines up front allowed GUINN to draft documents and attach one of the signed sheets to the back of the packet of documents that she would file with various entities and governmental offices in the performance of her services.

9

70.     Having the clients sign the blank pages with the signature lines gave the illusion that the clients had approved the packet, though in reality the clients were unaware of what they were getting attached to and when it was being done.

71.     On at least one occasion, GUINN told her client to cease mortgage payments to the lender and that the principal of the mortgage would be reassigned to GUINN after she filed the appropriate paperwork.

72.     GUINN would instruct her clients not to pay the lawful mortgage holder.

73.     GUINN would then accept and collect monthly principle mortgage payments from her clients.

74.     Often times, GUINN would not file the paperwork that she promised her clients she would file.

75.     GUINN would only file or draft approximately ten percent of all the paperwork she promised her clients that she would complete.

76.     Despite not being an attorney, GUINN drafted and filed the clients' legal paperwork and masked such work as if the clients were preparing the documents in a pro se capacity.

77.     When GUINN's clients had a hearing, GUINN would send her clients with a script of what to say, and, if in attendance, GUINN would act as a friend.

78.     GUINN instructed her staff to file legal paperwork with the appropriate State government offices and to chase after clients for their monthly payments.

79.     GUINN would have her staff call clients and request payment if the clients' payments were not made on time.

10

80.     Clients began to get angry at GUINN's staff because of the frequent calls made in regards to late payments.

81.     GUINN spent more time collecting payments from clients than producing the work promised.

82.     As results were not obtained for GUINN's clients, the clients became more and more delinquent in their monthly payments.

83.     GUINN instructed her staff to stop answering the phones because of disgruntled clients, and instructed her staff to work away from the office.

84.     GUINN stopped coming to the office during regular business hours after learning the Hawaii Attorney General's Office was attempting to serve her with a legal document.

85.     GUINN had her clients write checks to an account in GUINN's name at American Savings Bank until it closed her account because GUINN was bouncing too many checks.

86.     Subsequently, GUINN opened an account at First Hawaiian Bank.

87.     At least three of GUINN's clients were evicted from their homes during the course of five months within 2015.

88.     On at least one occasion after a client signed over the title to their house to GUINN, the client began making monthly rent payments to GUINN in order to remain in the house.

89.     GUINN would not make the mortgage payments on the homes in which she convinced her clients to transfer the title to her.

90.     After GUINN failed to make mortgage payments for a period of time on her clients' behalf, the mortgages would be foreclosed on and the sheriff would arrive to evict the tenants.

U.S. Bankruptcy Court - Hawaii  #16-90011   Dkt # 96   Filed  04/13/17   Page 18 of 38

91.     One particular client was a 78-year-old woman who was forced to move into a homeless shelter in downtown Honolulu after being evicted.

92.     In early March 2015, a client of GUINN had a hearing before Judge Bert Ayabe.

93.     At some point, GUINN faced eviction from her office space.

94.     GUINN asked her staff to pack boxes of all the litigation files they had on hand because GUINN was still actively practicing law by continuing to draft documents on her clients' behalf.

95.     After being evicted from her office, GUINN spread the boxes containing her legal documents out between two storage units and her personal condominium.

96.     GUINN wanted certain boxes containing litigation documents to go to the storage units so they would be hidden.

97.     BYRD personally holds himself out as a "Private Attorney General," who is able to practice law in the State of Hawaii.

98.     BYRD has made numerous appearances in Hawaii courts purporting to represent Hawaii consumers.

99.     Despite offering these services, BYRD is not a licensed attorney.

100.    If it should later be determined that any of these findings of fact should properly be considered conclusions of law, the Court so concludes on those legal issues.

Based upon the foregoing findings of fact, the Court makes the following conclusions of law.

## CONCLUSIONS OF LAW

1.      The Court has jurisdiction over the subject matter of this case and venue in this circuit is proper.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 96   Filed 04/13/17   Page 19 of 38

2.	Summary judgment is proper when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. In making this determination, the court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in favor of the nonmoving party.

3.	The above-described conduct set forth in the factual findings regarding WILLIAMS, including but not limited to his offering legal services as a "Private Attorney General," constitutes violations of HRS § 605-14, regarding the unauthorized practice of law.

4.	The above-described conduct set forth in the factual findings regarding GUINN, including but not limited to her offering legal services as a "Private Attorney General," constitutes violations of HRS § 605-14, regarding the unauthorized practice of law.

5.	The above-described conduct set forth in the factual findings regarding BYRD, including but not limited to his offering legal services as a "Private Attorney General," constitutes violations of HRS § 605-14, regarding the unauthorized practice of law.

6.	The above-described conduct set forth in the factual findings regarding CLOA, including but not limited to its offering of various legal services, constitutes violations of HRS § 605-14, regarding the unauthorized practice of law.

7.	The above factual findings regarding WILLIAMS, including but not limited to his offering of fraudulent mortgage relief services, demonstrates he acted as a distressed property consultant as defined by HRS § 480E-2, and violated HRS § 480E-10(a)(1) by misrepresenting and concealing material facts, HRS § 480E-10(a)(3) by making promises and guarantees that were not fully disclosed in the distressed property consultant contract, HRS § 480E-10(a)(6) by

13

receiving money from his clients before services were rendered, HRS § 480E-10(a)(8) by taking new mortgages on consumer's real property to secure the payment of compensation, HRS § 480E-10(a)(11) by taking the property from a client by filing documents such as new mortgages and UCC filings in regards to distressed property, and HRS § 480E-10(a)(12) by requiring his clients to sign a power of attorney for unlawful purposes.

8.      The above factual findings regarding GUINN, including but not limited to her offering of fraudulent mortgage relief services by and through HYL Consultants, LLC, demonstrates she acted as a distressed property consultant as defined by HRS § 480E-2, and violated HRS § 480E-10(a)(1) by misrepresenting and concealing material facts, HRS § 480E-10(a)(3) by making promises and guarantees that were not fully disclosed in the distressed property consultant contract, HRS § 480E-10(a)(6) by receiving money from her clients before services were rendered, HRS § 480E-10(a)(8) by taking new mortgages on consumer's real property to secure the payment of compensation, HRS § 480E-10(a)(11) by taking the property from a client by filing documents such as new mortgages and UCC filings in regards to distressed property, and HRS § 480E-10(a)(12) by requiring her clients to sign a power of attorney for unlawful purposes.

9.      The above factual findings regarding BYRD, including but not limited to his purporting to be a "Private Attorney General" who can render legal services despite not being appropriately licensed to provide such services demonstrates he violated HRS § 480E-10(a)(1) by misrepresenting and concealing material facts.

10.     The above factual findings regarding CLOA, including but not limited to its offering of fraudulent mortgage relief services, demonstrates it acted as a distressed property consultant as defined by HRS § 480E-2, and violated HRS § 480E-10(a)(1) by misrepresenting

14

and concealing material facts, HRS § 480E-10(a)(3) by making promises and guarantees that were not fully disclosed in the distressed property consultant contract, HRS § 480E-10(a)(6) by receiving money from its clients before services were rendered, HRS § 480E-10(a)(8) by taking new mortgages on consumer's real property to secure the payment of compensation, HRS § 480E-10(a)(11) by taking the property from a client by filing documents such as new mortgages and UCC filings in regards to distressed property, and HRS § 480E-10(a)(12) by requiring its clients to sign a power of attorney for unlawful purposes.

11.     The above factual findings regarding WILLIAMS, including but not limited to his offering of fraudulent services, demonstrates he engaged in deceptive trade practices by violating HRS § 481A-3(a)(1) by passing off his legal and financial services as if he was lawfully licensed to perform such services, HRS § 481A-3(a)(2) and (3) by causing a likelihood of confusion and misunderstanding as to the lawfulness of his services and certifications, HRS § 481A-3(a)(5) by claiming his fraudulent mortgage services have characteristics and benefits that they do not have, HRS § 481A-3(a)(7) by representing that his services are of a particular standard, quality, and grade despite the fact that all of his services cannot produce the results promised, and HRS § 481A-3(a)(12) by engaging in conduct that creates a likelihood of confusion or misunderstanding by Hawai'i consumers.

12.     The above factual findings regarding GUINN, including but not limited to her offering of fraudulent services by and through HYL Consultants, LLC, demonstrates she engaged in deceptive trade practices by violating HRS § 481A-3(a)(1) by passing off her legal and financial services as if she was lawfully licensed to perform such services, HRS § 481A-3(a)(2) and (3) by causing a likelihood of confusion and misunderstanding as to the lawfulness of her services and certifications, HRS § 481A-3(a)(5) by claiming her fraudulent mortgage

15

services have characteristics and benefits that they do not have, HRS § 481A-3(a)(7) by representing that her services are of a particular standard, quality, and grade despite the fact that all of her services cannot produce the results promised, and HRS § 481A-3(a)(12) by engaging in conduct that creates a likelihood of confusion or misunderstanding by Hawai'i consumers.

13.     The above factual findings regarding BYRD, including but not limited to his offering of fraudulent services, demonstrates he engaged in deceptive trade practices by violating HRS § 481A-3(a)(1) by passing off his legal and financial services as if he was lawfully licensed to perform such services, HRS § 481A-3(a)(2) and (3) by causing a likelihood of confusion and misunderstanding as to the lawfulness of his services and certifications, HRS § 481A-3(a)(5) by claiming his fraudulent mortgage services have characteristics and benefits that they do not have, HRS § 481A-3(a)(7) by representing that his services are of a particular standard, quality, and grade despite the fact that all of his services cannot produce the results promised, and HRS § 481A-3(a)(12) by engaging in conduct that creates a likelihood of confusion or misunderstanding by Hawai'i consumers.

14.     The above factual findings regarding CLOA, including but not limited to its offering of fraudulent services, demonstrates it engaged in deceptive trade practices by violating HRS § 481A-3(a)(1) by passing off its legal and financial services as if it was lawfully licensed to perform such services, HRS § 481A-3(a)(2) and (3) by causing a likelihood of confusion and misunderstanding as to the lawfulness of its services and certifications, HRS § 481A-3(a)(5) by claiming its fraudulent mortgage services have characteristics and benefits that they do not have, HRS § 481A-3(a)(7) by representing that its services are of a particular standard, quality, and grade despite the fact that all of its services cannot produce the results promised, and HRS §

16

481A-3(a)(12) by engaging in conduct that creates a likelihood of confusion or misunderstanding by Hawai'i consumers.

15.    Defendants' violations of HRS Chapter 480 render void and unenforceable any contract or agreement entered into by or on behalf of Defendants and consumers which arises out of the conduct at issue within this matter pursuant to HRS § 480-12.

16.    If it should later be determined that any of these conclusions of law should properly be deemed findings of fact, the Court so finds as to those facts.

## ORDER

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Plaintiff STATE OF HAWAII's Motion for Summary Judgment is GRANTED, as well as the following:

1.    WILLIAMS, GUINN, BYRD, and CLOA are hereby permanently enjoined from the following:

    a.    Offering any legal services including making court appearances for others, as well as the drafting of or recommendation of litigation, mortgage relief, or reverse mortgage, or annuities, or any other type of financial planning, insurance, or trust documents or holding out as a purveyor of legal, insurance, or financial planning services or anything similar thereto;

    b.    The employment of WILLIAMS, GUINN, and BRYD by any person or entity that offers, performs, or delivers such documents, plans, or services, from holding themselves out to consumers as attorneys or actually providing legal services as defined by HRS § 605.14; and

    c.    From posting or maintaining a website, telephone listing, or any form of advertising which implies that WILLIAMS, GUINN, BRYD, or CLOA

17

can provide legal services including making court appearances for others, as well as the drafting of or recommendation of litigation, mortgage relief, or reverse mortgages, or annuities, or any other type of financial planning, insurance, or trust documents or holding out as a purveyor of legal, insurance, or financial planning services or anything similar thereto.

2.  A $500,000 civil penalty is hereby imposed on WILLIAMS pursuant to HRS § 480-3.1.

3.  A $60,000 civil penalty is hereby imposed on GUINN pursuant to HRS § 480-3.1.

4.  A $10,000 civil penalty is hereby imposed on BYRD pursuant to HRS § 480-3.1.

5.  A $570,000 civil penalty is hereby imposed on CLOA pursuant to HRS § 480-3.1.

6.  Anthony Williams, Hep Guinn, Kenneth Byrd, Common Law Office of America, Mortgage Enterprise Investments, and others on their behalf, may not enforce the mortgages or financing statements recorded against consumers that arise out of the conduct at issue in this matter, and this adjudication serves to release the consumers from said mortgages or financing statement pursuant to HRS § 480-12.

7.  Judgment for the relief described herein shall enter separately.

DATED: Honolulu, Hawai'i, **SEP 2 8 2016**

EDWIN C. NACINO

JUDGE OF THE ABOVE-ENTITLED COURT

---

*State of Hawai'i vs. Anthony Williams, et al.*, Civil No. 13-1-2484, Circuit Court of the First Circuit; ORDER GRANTING PLAINTIFF STATE OF HAWAII'S MOTION FOR SUMMARY JUDGMENT, FILED ON JULY 22, 2016

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 96   Filed  04/13/17   Page 25 of 38

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number:  14-62939-CIV-MARTINEZ-GOODMAN

PRIVATE ATTORNEY GENERAL
ANTHONY WILLIAMS, on behalf of himself
and the people of Hawaii,

      Plaintiff,

vs.

STATE OF HAWAII, et al.,

      Defendants.

_____/

### ORDER DISMISSING CASE

THIS CAUSE came before the Court upon a *sua sponte* review of the record.  On

December 29, 2014, Plaintiff Anthony Williams filed a Complaint against the State of Hawaii and

various, as-yet-unidentified, individuals, entities, governments, agencies, municipalities, and

instrumentalities.  For the reasons explained below, Plaintiff's Complaint is dismissed.

### Discussion

Federal Rule of Civil Procedure 8(a) requires a pleading to contain "a short and plain

statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Although a *pro se* litigant's pleadings are construed

more liberally than pleadings drafted by attorneys, "this leniency does not give the court license to

serve as de facto counsel for a party . . . or to rewrite an otherwise deficient pleading in order to

sustain an action."  *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.

1998) (citations omitted).

EXHIBIT B

Plaintiff seeks a declaratory judgment, a public apology from Attorney General David M. Louie, former Governor Abercrombie and the State of Hawaii, an injunction against Defendants, a public reprimand to deter future misconduct, and damages in the amount of 3 million dollars for each claim of civil rights violations, abuses of power, emotional distress, mental anguish, and public embarrassment alleged. Specifically, Plaintiff alleges violations under 42 U.S.C. 1983, generally assert claims of conspiracy to defraud, intentional infliction of emotional distress, defamation and slander. On its face, Plaintiff's Complaint does not state a viable cause of action.

To state a claim under 1983, a plaintiff must show "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir.2005). "The traditional definition of acting under color of state law requires that the defendant ... have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *U.S. v. Belfast*, 611 F.3d 783, 808 (11th Cir.2010) (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (internal quotations omitted). Plaintiff generally asserts that Defendants have "acted in bad faith in filing bogus charges and injunctions against the Plaintiffs, denying Plaintiffs the filing and apostilling of valid legal documents, defaming the character and slandering the name of Plaintiff PAG Williams and having caused immeasureable harm to not only the Plaintiffs but the Plaintiff's family, client's and the public at large" [ECF No. 1 at 13], but fails to allege specific facts to support his claims. Such conclusory, vague statements are not sufficient to sustain an actionable 1983 claim.

The remaining allegations of Plaintiffs' Complaint barely articulate an intelligible sentence and certainly fail to assert any colorable claims for relief. The 13-page document is a rambling

-2-

collection of quotes interspersed with declarations regarding the failings of America and the U.S. Constitution.

Notwithstanding the pleading leniency afforded to *pro se* plaintiffs, it is not the Court's responsibility to discover claims for relief. Plaintiffs' claims are meritless, factually and legally frivolous, and fail to state a claim upon which relief can be granted. Although the Complaint sets forth several statements, they do not collectively establish, or put Defendants on notice, of any viable causes of action Plaintiffs intend to pursue. *See Anderson v. Dist Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364 (11th Cir. 1996) (holding that plaintiff's complaint makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief"). Accordingly, Plaintiffs' claims are dismissed. After careful consideration, it is hereby:

**ORDERED AND ADJUDGED** that

Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE.** All pending motions are **DENIED AS MOOT** and this case is **CLOSED.**

DONE AND ORDERED in Chambers at Miami, Florida, this 25 day of March, 2015.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record

-3-

Anthony Williams
Sui Juris
5846 South Flamingo Road Suite 228
Fort Lauderdale, Florida [zip exempt]
1-877-714-1233 ext.105

FILED

16 JUN -1   ?   1:51

CLERK, U.S.      CT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS, FLORIDA

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

2: 16 -cv- 425 -FtM- 38MRM

| | |
|---|---|
| Anthony Williams,<br><br>                                    Plaintiff,<br><br>vs.<br><br>ANTHONY TROY WILLIAMS aka; WILLIAMS, ANTHONY TROY; ANTHONY WILLIAMS; ANTHONY T. WILLIAMS; A.T. WILLIAMS; TROY WILLIAMS; A. TROY WILLIAMS; WILLIAMS, TROY; any and all variations of this legal name; JOHN DOES 1-100; JANE DOES 1-100; DOE CORPORATION 1-100; DOE PARTNER-SHIPS 1-100; DOE ENTITIES 1-100; DOE GOVERNMENTAL UNITS 1-100<br><br>                                    Defendants, | CIVIL NO.:<br><br>COMMON LAW JURISDICTION<br><br>**UCC 1 § 103.6**<br><br><br>**COMPLAINT**<br><br>TRIAL BY JURY DEMANDED<br><br> EXHIBITS A - F<br><br><br>**HEARING:**<br><br>Date: Not Set<br><br>Time: Not Set<br><br>Judge: |

1

EXHIBIT C

## COMPLAINT

COMES NOW, Anthony Williams, a Foreign American National on behalf of himself and files this instant common law action against the above named defendants. In support of this common law action, Plaintiff will state the following facts:

## VENUE AND JURISDICTION

Anthony Williams brings this action pursuant to the authority defined by the U.S. Constitution Article III, section 2 and Congressional statutes (Title 28 U.S.C. 1251, 1253, 1331, 1332, and to enjoin the Defendants from engaging in the unlawful acts in the this complaint, and for civil and criminal penalties pursuant to applicable common laws regarding Fraud, Misrepresentation, Forgery, Identity Theft, Theft By Conversion and venue is permitted by Federal Rule of Civil Procedure 12(b)(3), Title 28 U.S.C. 1404, 1391, 1392, et seq., PAG Anthony Williams also seeks such other relief as the Court may deem appropriate.

## THE PARTIES

Plaintiff Anthony Williams is a constitutional American National and not statutory citizen under federal law pursuant to 8 U.S.C. 1101(a)(21) and 8 U.S.C. 1452. Born in a state of the Union and a nonresident per 26 U.S.C. 7701(b)(1)(B) but not alien per 26 U.S.C. 7701(b)(1)(A) or individual per 26 CFR 1.1441-1(c)(3). Stateless person as per Newman-Green v. Alfonso Larrain, 490 U.S. 826 (1989). Constitutional diversity of citizenship pursuant to U.S. Constitution Article III, Section 2, but not statutory diversity pursuant to 28 U.S.C. 1332 with an address of 5846 S. Flamingo Road, Fort Lauderdale, Florida [zip exempt].

Defendants ANTHONY TROY WILLIAMS aka WILLIAMS, ANTHONY TROY; ANTHONY WILLIAMS; ANTHONY T. WILLIAMS; A.T. WILLIAMS; TROY WILLIAMS;

2

A. TROY WILLIAMS; WILLIAMS, TROY; with an address of 10821 Morningstar Drive,
Hollywood, Florida 33026, is a legal person, legal fiction as it is defined in law.

The other Defendants have not yet been identified but Plaintiff reserves the right to amend
this complaint when other Defendants can be specifically identified.

## THE ARGUMENT

Plaintiff asserts that the above named Defendant(s) have caused immeasurable harm to the
Plaintiff by being mistaken as the Plaintiff and/or having cause for the Plaintiff to act as a surety
for the Defendant(s) which has caused the Plaintiff to be subjected to unlawful and illegal search,
seizures, detainments and arrests.

## I.    STATEMENT OF THE CASE AND FACTS

1. Defendant(s) are corporate employees/creation of the U.S. Government and has
   erroneously identified the Plaintiff as the Defendant.

2. Plaintiff is a flesh and blood man with a living soul who is made in the likeness and
   image of Yahweh Elohim and Yahshua the Messiah.

3. Defendant ANTHONY TROY WILLIAMS has been misidentified as being the
   Plaintiff and has caused immeasurable harm to the Plaintiff.

4. Plaintiff has filed numerous documents, declarations and affidavits which proved a
   distinct difference between the Plaintiff and the Defendant ANTHONY TROY
   WILLIAMS. (**Exhibits A**)

5. Plaintiff has a power of attorney which gives Plaintiff executive powers over
   Defendant. (**Exhibit B**)

6. The Defendant ANTHONY TROY WILLIAMS debts have caused immeasurable
   financial harm to be inflicted upon the Plaintiff because of mistaken identity or

3

identity theft by Defendant ANTHONY TROY WILLIAMS or the other

Defendants named in the complaint to access an account set up in Defendant

ANTHONY TROY WILLIAMS name.

7.  Defendant ANTHONY TROY WILLIAMS and other Defendants have caused the

Plaintiff to receive numerous traffic citations and criminal charges in Defendant

ANTHONY TROY WILLIAMS  name including but not limited to Driving

Without A License, Driving On A Suspended License, Placing Improper Tags On

A Vehicle, Failure To Register Vehicle, Speeding, Running Stop Signs, Resisting

Arrest Without Violence, Rape, Aggravated Child Molestation, Unlicensed Practice

of Law,  Filing False Official Statement, in which Plaintiff was unlawfully charged

as the Defendant ANTHONY TROY WILLIAMS when Plaintiff is a distinct

separate entity from the Defendant ANTHONY TROY WILLIAMS.

8.  Plaintiff has only one valid identification card which was issued by the United

States Office of the Private Attorney General. (**Exhibit  C**)

9.  All other identification cards issued by the Federal and State Governments were

issued to the Defendant ANTHONY TROY WILLIAMS and do not identify the

Plaintiff nor do they make the Plaintiff a surety for the Defendant ANTHONY

TROY WILLIAMS.

10. Plaintiff is the owner, executor, administrator and beneficiary of the Defendant

ANTHONY TROY WILLIAMS and has trademarks and copyrights filed on April

11, 2011 giving Plaintiff exclusive ownership of the Defendants name ANTHONY

TROY WILLIAMS. (**Exhibit D**)

4

11. Other unnamed Defendants who have yet to be specifically identified have assigned the Defendant a Social Security number in 1988 and erroneously have attached this number to the Plaintiff, when in fact the Plaintiff was born in 1971 and not 1988.

12. Defendant ANTHONY TROY WILLIAMS was created in the year of 1988 by the Social Security Administration which is veritable evidence that the Plaintiff is a distinct separate entity from the Defendant ANTHONY TROY WILLIAMS.

13. Plaintiff was deceptively assigned a birth certificate bearing the name of the Defendant which created a corporate fiction bearing a similar name to the Plaintiff which was set up to deceive the Plaintiff and all others that the Defendant and the Plaintiff are one in the same when in fact it has been proven on the public record that they are not the same but in fact two separate distinct entities. (**Exhibit A last page**)

14. Plaintiff has a UCC-1 financing statement filed in his birth state against the Defendant dated November 9, 2012 which secures to Plaintiff all of the Defendant's ANTHONY TROY WILLIAMS rights in assets, lands and personal property now owed and hereafter acquired. (**Exhibit E**)

15. Plaintiff filed numerous affidavits on the county record and published a legal notice in the local newspaper giving any juristic person the opportunity to dispute the validity of Plaintiff's claims which validates and authenticates that Plaintiff and Defendants and separate entities. The legal notice went unrebutted and therefore stands as a matter of law. (**Exhibit F**)

5

## II.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1.  Defendants began their fraudulent and deceptive actions prior to the birth of the
    Plaintiff and have not acted in good faith but has destroyed the credibility of the
    Plaintiff through deception. Defendants committed acts set forth above with total,
    complete, utter and reckless disregard of the probability of causing Plaintiff to
    suffer emotional distress.

2.  As an actual and proximate cause of Defendants actions, Plaintiff have suffered
    severe emotional distress, including but not limited to lack of sleep, anxiety and
    depression. As a result of Defendant's wrongful acts and/or omissions, Plaintiff is
    entitled to various remedies including, but not limited to, rescission,
    reimbursement, equitable recoupment, indemnification, damages (statutory,
    actual, punitive and/or treble damages), attorney's fees and cost and injunctive
    relief for the undue emotional distress caused by the Defendants.

## III.   CONSPIRACY BY DEFENDANTS TO DEFRAUD PLAINTIFF

3.  All of the Defendants have conspired, victimize, criminalize and stole from the
    Plaintiff for monetary gain whether knowingly or unknowingly.

4.  A conspiracy exists among these Defendants to defraud Plaintiff by using the
    likeness of the Plaintiff's name to open accounts without the Plaintiff's
    knowledge causing immeasurable financial harm to Plaintiff.

5.  A conspiracy exists among these Defendants to deceive other agencies into
    believing that Plaintiff and Defendant ANTHONY TROY WILLIAMS are one
    and the same entity when in fact they are not.

6.  A conspiracy exist among these Defendants to deny the Plaintiff his basic
    contractual rights to receive a receipt from any monetary transaction and copy of

6

any and all documents that have been signed by the Plaintiff or some unknown person who has been signing on behalf of the legal person ANTHONY TROY WILLIAMS and profiting from the same without compensating the Plaintiff. This includes court cases, IRS tax returns, credit applications and bank transactions.

## IV.   INCORPORATION OF PREVIOUSLY FILED AFFIDAVITS, MOTIONS, NOTICES, WRITS OR PETITIONS

7.   Plaintiffs hereby incorporates all previously filed affidavits, motions, notices, writs or petitions of similar relevance against Defendants which have been previously filed on the public record, as if they were specifically outlined in their entirety. However, if there is any portion within those document or any of the previously filed documents which would prevent Plaintiff from being awarded the relief sought, Plaintiff hereby notices this court to stricken that portion from the document in order that Plaintiff may gain relief.

## V.   DEMAND FOR TRIAL BY JURY

8.   Plaintiff assert his constitutional right to a trial by jury to settle this controversy and do not agree nor waive their right to a trial by jury and expects this court to accommodate said trial at the courts earliest convenience. A separate demand will follow this complaint.

### CONCLUSION

In light of all the foregoing facts it is quite evident that the Defendants have violated their contractual agreements with the Plaintiff and acted in bad faith in stealing Plaintiff's identity through trickery and deceit and having caused immeasurable harm to not only the Plaintiff but to the Plaintiff's family and the public at large. Plaintiff have properly stated a claim upon which relief can be granted therefore and thereby eradicating any attempt by the Defendants to file a

7

standard frivolous Motion to Dismiss response pursuant to Rule 12(b) by falsely claiming

Plaintiff have not stated a claim upon which relief can be granted.

## PRAYER FOR RELIEF SOUGHT

1. Plaintiff is seeking actual, general, punitive, compensatory and special damages to be determined at a trial by jury.

2. In the event that the Defendants want to settle this case without a trial by jury, Plaintiff is demanding a full page press release in all of the local Newspapers apologizing to Anthony Williams for the malicious lies, acts and deeds they committed and an apology to the public at large for betraying the trust of the people.

3. For Declaratory Relief, including but not limited to the following decrees of the court that:

    a) Plaintiff is the prevailing party.

    b) The Plaintiff never has been and never will be the same entity as the Defendant.

    c) A public apology from Defendants for these egregious acts committed against the Plaintiff.

    d) Compensate Plaintiff $3 million dollars each for the loss of income, defamation of character, slander, emotional distress, mental anguish and public embarrassment.

    e) Compensate Plaintiff for his attorney fees for being the prevailing party in compliance with the Civil Rights Attorneys Fees Award Act (commonly known as the "Private Attorney General Act").

    f) Injunction filed against Defendants and a public reprimand to deter future persons from committing similar felonious acts.

    g) That Plaintiff is a American National and not a U.S. Citizen.

8

h) That Defendants and any other persons, corporations or governmental entities acknowledge the distinction between the Plaintiff and the Defendant ANTHONY TROY WILLIAMS.

i) That any case in a court of law involving Plaintiff must be commenced in the true name of the Plaintiff Anthony Williams instead of the legal person's name ANTHONY TROY WILLIAMS.

j) That Plaintiff can not be charged with a crime unless it can be shown and proven on the record that Plaintiff has violated the law of Yahweh and the U.S. Constitution.

k) That any and all cases pending, previously adjudicated or will arise in the future be dismissed with prejudice if they bear the name capitalized as ANTHONY TROY WILLIAMS.

Executed this _31_ day of _May_ 2016.

_Anthony Williams_
Anthony Williams
American National
5846 S. Flamingo Rd #228
Fort Lauderdale, Fl. 33026

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been furnished by US Mail, Fax or email to:

ANTHONY TROY WILLIAMS
10821 MORNINGSTAR DRIVE
HOLLYWOOD, FL  33026

on this _31_ day of May 2016.

10