

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re: | ) Case No. 15-01446 |
| | ) Chapter 7 |
| ANABEL GASMEN CABEBE, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| ⸻⸻⸻⸻⸻ | ) |
| | ) |
| STATE OF HAWAII, by its OFFICE | ) Adv. Pro. No. 16-90011 |
| OF CONSUMER PROTECTION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) *Related Document No. 83* |
| | ) |
| ANABEL GASMEN CABEBE, | ) |
| MORTGAGE ENTERPRISE, | ) |
| MORTGAGE ENTERPRISE | ) |
| INVESTMENTS, and MORTGAGE | ) |
| ENTERPRISES INVESTMENTS, | ) |
| | ) |
| Defendants. | ) |
| ⸻⸻⸻⸻⸻ | ) |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW
## ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,
## <u>OR ALTERNATIVELY FOR SUMMARY JUDGMENT</u>

Plaintiff State of Hawaii Office of Consumer Protection's Motion for Default Judgment, Or Alternatively Summary Judgment, filed March 20, 2017 (the "Motion"), came on for hearing before the Honorable Robert J. Faris on April 27, 2017, pursuant to notice. James F. Evers, Esq., appeared on behalf of Plaintiff State of Hawaii Office of Consumer Protection ("OCP"). Harrison P. Chung, Esq., appeared on behalf of Party in Interest Hep Guinn. Edna Franco appeared *pro se* telephonically. No appearance was made at the hearing by or on behalf of Defendants Anabel Gasmen Cabebe ("Cabebe"), Mortgage Enterprise ("ME") or Mortgage Enterprise Investments and Mortgage Enterprises Investments (collectively "MEI") (Cabebe, MEI and ME shall collectively be referred to as "Defendants").

Before me is a second dispositive motion in the case filed by OCP. OCP earlier had moved for, and was granted, summary judgment against Cabebe for her involvement in the operation of MEI and ME and the mortgage rescue fraud schemes that involved the filing of bogus financing statements and/or mortgages in the Bureau of Conveyances of the State of Hawaii ("Bureau").[1] In my prior decision, I made determinations of nondischargeability under 11 U.S.C. § 523(a)(2)(A) as to awarded restitution, and under 11 U.S.C. § 523(a)(7) as to awarded fines and

_____

[1] Adv. Dkt #25.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 2 of 41

penalties, and awarded permanent injunction relief.[2]  Based on the record then before

me, however, in the absence of MEI and ME being added as parties, I was reluctant

to award the requested declaratory relief and declare the Bureau filings void and

released.[3]  Through its second dispositive motion, OCP seeks a dispositive ruling as

to all remaining issues in the case.  I will accordingly not attempt to repeat the earlier

findings of fact and conclusions of law particular to Cabebe, which remain binding

and which serve to support the relief awarded to date, and which support the entry

of final judgment.

OCP's Motion is granted in its entirety.  As for the additional relief requested

through OCP's second dispositive motion, and based on the thoroughly developed

record, there is no genuine dispute concerning the following additional

### FINDINGS OF FACT:

## I.    Procedural History

1.    After having been granted leave,[4] OCP filed its first amended complaint

on January 4, 2017.[5]

---

[2] Adv. Dkt #25, being the Findings of Fact and Conclusions of Law on Plaintiff's
Motion for Summary Judgment entered on October 5, 2016.

[3] Adv. Dkt #25, pp.24-25, ¶46.

[4] Adv. Dkt #50.

[5] Adv. Dkt #52.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 3 of 41

2.      The first amended complaint added MEI[6] and ME as parties, but is otherwise substantially similar to the initial complaint for which summary judgment was granted against Cabebe, except an additional count was added seeking disgorgement as to ME and MEI.

3.      On January 6, 2017, summonses were issued as to Cabebe,[7] ME,[8] and MEI.[9]

4.      Cabebe was thereafter timely and properly served with the first amended complaint, the exhibits thereto, and an appropriate summons, both in her personal capacity[10] and in her capacity as an agent and authorized representative of ME[11] and MEI.[12]

---

[6] According to OCP, MEI apparently inadvertently submitted some of its filings at the Bureau under the misspelled name "Mortgage Enterprises Investments," and as these filings are within the scope of the declaratory relief sought by OCP, out of an abundance of caution OCP opted to name "Mortgage Enterprises Investments" as a defendant.

[7] Adv. Dkt #54.

[8] Adv. Dkt #55.

[9] Adv. Dkt #56 as to Mortgage Enterprise Investment; Adv. Dkt #57 as to Mortgage Enterprises Investment.

[10] Adv. Dkt #58.

[11] Adv. Dkt #59.

[12] Adv. Dkt #60 as to Mortgage Enterprise Investment; Adv. Dkt #61 as to Mortgage Enterprises Investment.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed 05/11/17   Page 4 of 41

5.　　ME, in addition to service through Cabebe, was timely and properly served with the first amended complaint, the exhibits thereto, and an appropriate summons through Henry Malinay ("Malinay"),[13] Edna Franco ("Franco"),[14] and Angelita Pasion.[15]

6.　　MEI was also served.　In addition to service through Cabebe, the first amended complaint, the exhibits thereto, and an appropriate summons was timely and properly served upon Mortgage Enterprise Investments through Malinay,[16] Franco,[17] Angelita Pasion,[18] Barbara Ann Williams,[19] Anthony Troy Williams ("Williams"),[20] Hep Guinn (also known as Hep Lusica) ("Guinn"),[21] and Mary Jean

---

[13] Adv. Dkt #63.

[14] Adv. Dkt #64.

[15] Adv. Dkt #65.

[16] Adv. Dkt #60.

[17] Adv. Dkt #60.

[18] Adv. Dkt #60.

[19] Adv. Dkt #67.

[20] Adv. Dkt #66.

[21] Adv. Dkt #68.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 5 of 41

Castillo.[22]  In addition to service through Cabebe, Mortgage Enterprises Investments was timely and properly served with the first amended complaint, the exhibits thereto, and an appropriate summons through Williams.[23]

7.     Neither Cabebe, ME, nor MEI filed an answer or other responsive pleading to the first amended complaint, and accordingly, default was entered against the Defendants on February 9, 2017.[24]

8.     On March 30, 2017, OCP filed its second dispositive Motion, seeking final judgment against the Defendants.[25]  None of the Defendants filed opposition to the Motion.  Franco, Guinn and Williams did file various motions, but nothing raised a genuine issue of material fact as to OCP's Motion.

## II.     MEI's Mortgage Assistance Relief Services

9.     Homeowners in Hawaii were targeted by MEI to purchase a mortgage reduction service that would supposedly reduce by one-half a client's mortgage loan balance, monthly mortgage loan payment and the remaining term of the mortgage loan.

---

[22] Adv. Dkt #69.

[23] Adv. Dkt #61.

[24] Adv. Dkt #76.

[25] Adv. Dkt #83.

6

10. Prospective MEI clients were told of MEI's perfect success rate and refund policy, and were provided with a copy of MEI's written guarantee of a full refund.

11. MEI's service was sold to consumers, being people who would use the services primarily for personal, family, or household purposes.

12. Because there was no legitimate mortgage loan reduction service for consumers to purchase, essentially everything represented to consumers about the service offered by MEI was false.

13. At all times, MEI was operated with the intent and purpose of defrauding consumers in Hawaii.

14. In furtherance of the fraud, MEI recorded financing statements and mortgages in the Bureau, none of which were supported by consideration.[26]

15. The phony MEI mortgage reduction service was sold to homeowners by various people affiliated with MEI, including but not limited to Cabebe and Malinay.

16. Consumers were told that MEI was overseen by the Common Law Office of America ("CLOA"), a group of so-called private attorneys general which included Cabebe and Williams.

---

[26] Adv. Dkt #25, pp. 3-4, ¶¶ 10-13, and p. 6 ¶¶ 32-34.

7

17.     Consumers were provided with legal-looking forms which appeared to have been prepared by attorneys.

18.     The guaranteed benefits of MEI's mortgage reduction service were supposedly obtained through financing statements which identified the consumer's property. The financing statement would be filed in the Bureau and would provide that any mortgage recorded against the property is discharged. MEI would also typically record a mortgage in its favor, for no consideration, and the payment thereunder would be one-half the monthly payment due under the consumer's original (or real) mortgage. The MEI mortgage contained language, similar to that found in the MEI financing statement, that any other mortgage recorded against the property is null and void.

19.     Despite the ineffectiveness of the service, consumers were misled to believe the service was successful.

20.     Consumers were provided with file-stamped copies of the recorded financing statements or mortgages, giving consumers the impression that the service seemed to work just as the consumers were told it would.

21.     Because the consumers paid in advance, the service was designed so that the consumer had purchased the service before having the opportunity to discover that something might be amiss.

8

22.     MEI instructed consumers not to make payments on their original mortgages to their lenders and servicers, giving the appearance that the reason payments would no longer be required is because the service worked.

23.     In furtherance of the fraud, consumers were asked to make future mortgage payments to MEI in an amount which, not coincidentally, was one-half of the consumers' original (or real) mortgage.

24.     MEI instructed lenders and servicers not to contact or communicate with the consumer-borrowers, citing the retention of CLOA's attorneys by consumers.  MEI directed lenders and servicers to instead communicate through the consumer's attorney, being one of the so-called "attorneys" at CLOA acting pursuant to a power of attorney the consumer had executed in favor of MEI.  MEI's attempt to cut off communications between the consumers and their mortgage loan lenders and servicers helped to conceal the fraud being perpetrated by MEI.

25.     Numerous bogus mortgages and bogus financing statements have been filed in the Bureau by or on behalf of MEI, purporting to impact the property interests of the consumers.

26.     Cabebe used the bogus service to encumber her own properties.

27.     As Cabebe's properties have been sold, the sale proceeds constitute an asset of the bankruptcy estate, and in the absence of the declaratory relief sought by

9

OCP, claims now exist to the proceeds from the sale of Cabebe's properties based upon the disputed lien rights of MEI attributable to its bogus Bureau filings.

28. The only MEI filing with the Business Registration ("BREGS") Division of the Department of Commerce & Consumer Affairs ("DCCA") is the attempted registration of the MEI tradename to Williams, which falsely represents MEI as being a Tennessee corporation. MEI is not lawfully incorporated, in Tennessee or anywhere else. Nothing would have authorized MEI to operate as it did, but in the absence of an effective registration with BREGS, at no time was MEI permitted to conduct business in Hawaii.

## III. ME's Mortgage Assistance Relief Services

29. At a time that roughly coincides with the incarceration and extradition of Williams to Georgia to answer for unrelated criminal charges, the business of ME was set up by Cabebe and others.

30. As was the case with MEI, ME targeted homeowners in Hawaii to purchase a mortgage reduction service that would supposedly reduce by one-half a client's mortgage loan balance, monthly mortgage loan payment and the remaining term of the mortgage loan.

31. Prospective ME clients were told of ME's perfect success rate and refund policy, and were provided with a copy of ME's written guarantee of a full refund.

10

32.    ME's service was sold to consumers, being people who would use the services primarily for personal, family, or household purposes.

33.    Because there was no legitimate mortgage loan reduction service for consumers to purchase, essentially everything represented to consumers about the service offered by ME was false.

34.    At all times, ME was operated with the intent and purpose of defrauding consumers in Hawaii.

35.    In furtherance of the fraud, ME recorded financing statements in the Bureau, none of which were supported by consideration.[27]

36.    The phony ME mortgage reduction service was sold to homeowners by various people affiliated with ME, including but not limited to Cabebe and Malinay.

37.    ME essentially perpetrated the same type of fraud as MEI, using the same phony business model, except ME did not take or record mortgages.  ME relied instead entirely on bogus financing statements filed in the Bureau, which identified the consumer's real property, and which contained language purporting to discharge any mortgage recorded against the consumer's property.

---

[27] Adv. Dkt #25, pp. 3-4, ¶¶ 10-13, and p. 6 ¶¶ 32-34.

11

38.     As was the case with MEI, consumers purchasing the ME service were misled to believe the service was successful.

39.     Consumers were provided with file-stamped copies of the recorded financing statements or mortgages, giving consumers the impression that the service seemed to work just as the consumers were told it would.

40.     Because the consumers paid in advance, the service was designed so that the consumer had purchased the service before having the opportunity to discover that something might be amiss.

41.     ME instructed consumers not to make payments on their original mortgages to their lenders and servicers, giving the appearance that the reason payments would no longer be required is because the service worked.

42.     ME was run by its purported partners, being Cabebe, Malinay, Franco and Angelita Pasion.  ME was operated using forms nearly identical to those used in running MEI, except that the word "Investments" in the MEI forms was deleted so the name read simply "Mortgage Enterprise."

43.     ME is not registered with BREGS to conduct business in Hawaii.

**IV.    Filings by Non-Parties**

44.     After OCP served Franco, as partner and/or general agent on behalf of ME and MEI, with the first amended complaint, Franco moved to have the first

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed 05/11/17   Page 12 of 41

amended complaint dismissed solely as to her personally,[28] but such relief is neither necessary nor appropriate since Franco is not personally named as a defendant to the action.

45.     Franco's sworn statement made in support of her filing recognizes the fraudulent nature of the mortgage reduction service sold to consumers.

46.     After OCP served Guinn, as partner and/or general agent on behalf of MEI, with the first amended complaint, and after filing both an answer[29] and amended answer[30] to the first amended complaint as a party in interest, Guinn similarly moved to have the first amended complaint dismissed solely as to her personally,[31] and here again such relief is neither necessary nor appropriate since Guinn is not personally named as a defendant to the action.

47.     Guinn acknowledged being affiliated with MEI from at least July 22, 2013, until October 11, 2013,[32] during which time she held herself out to be a private attorney general with CLOA and appeared in court on behalf consumer-clients of

---

[28] Adv. Dkt #62.

[29] Adv. Dkt #74.

[30] Adv. Dkt #80.

[31] Adv. Dkt #92.

[32] Adv. Dkt #74, p.3 of 7.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 13 of 41

CLOA/MEI, for which Guinn has since been enjoined from the unauthorized practice of law.[33]

48.    Guinn filed a memorandum indicating that she did not oppose the entry of summary judgment in favor of OCP,[34] and subsequently withdrew her motion seeking dismissal.[35]

49.    After OCP served Williams, as partner and/or general agent on behalf on of MEI, with the first amended complaint, Williams moved to set aside the entry of default as to MEI, purportedly acting as "attorney in fact" for MEI,[36] but the request for relief is not properly before the Court, as Williams is not personally named as a defendant to the action, and he is not an attorney licensed to practice law in Hawaii, or anywhere else, and may not act as an attorney for MEI.[37]  Like Guinn,

---

[33] Adv. Dkt #102-1, pp. 1-18.

[34] Adv. Dkt #105.

[35] Adv. Dkt #109.

[36] As part of MEI's scam, consumers were asked to sign a special power of attorney before a notary public appointing Williams (and others affiliated with CLOA, including Franco and Guinn), as their "attorney in fact."  Williams is not an attorney at law, but is relying on his "attorney in fact" status stemming from the power of attorney created in favor of CLOA.

[37] *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993), citing *Osborn v. Bank of United States*, 9 Wheat. 738, 22 U.S. 738 (1824)); *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993); *Church of the New Testament v. United States*, 783 F.2d 771, 772-73 (9th Cir. 1986); *In re Am. West Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed 05/11/17   Page 14 of 41

Williams has appeared in court on behalf consumer-clients of CLOA/MEI, for which Williams has since been enjoined from the unauthorized practice of law.[38]

50.     Even if Williams' request were to be considered, nothing in his moving papers comes close to constituting a meritorious defense to the alleged misconduct, and the sworn statement offered by Williams in support of his motion supports OCP's case.  Williams acknowledges that MEI was operating in Hawaii since April of 2013 and representing hundreds of consumers in need of foreclosure assistance,[39] Cabebe and Malinay, among others, were "hired" to "conduct MEI's business,"[40] those people carrying out MEI's business were discovered to have "committed" many "fraudulent acts" and "scammed many people,"[41] those same people were "fired" upon the discovery of the fraud,[42] and those same people "fired" from MEI thereafter set up new businesses of their own, using MEI forms to "facilitate their scam."[43]

---

[38] Adv. Dkt #96, pp. 8-25.

[39] Adv. Dkt #79, p. 1, ¶¶ 2-3.

[40] Adv. Dkt #79, p. 1, ¶¶ 2-3, identifying Cabebe, Malinay, Franco and Guinn.

[41] Adv. Dkt #79, p. 1, ¶ 5.

[42] Adv. Dkt #79, p. 1, ¶ 6.

[43] Adv. Dkt #79, pp. 1-2, ¶¶ 3, 7, 9 and 19.

15

51.     ME was operating its version of the mortgage reduction scheme for at least nine months while Williams was incarcerated.

52.     While the record is barren of a single instance where a consumer has benefitted from the mortgage reduction service, perplexingly, Williams claims MEI "still stand[s] behind its guarantee to its homeowners."[44]  The guaranty to which Williams refers is MEI's written guarantee providing homeowners with a "100% Money Back Guarantee" if MEI is unsuccessful in reducing both a homeowner's monthly payment and payoff time.[45]  ME used a nearly identical written guarantee.[46] The relief sought by OCP is consistent with the so-called written guarantees, and in large part essentially constitutes a claim against the so-called guarantees on behalf of consumers.  The promised results were not delivered, so according to MEI's written guarantee, full refunds are due the consumers.  The same is true with respect to the lack of performance on the part of ME, and the resulting liability of ME under ME's written guaranty.  This is at least one of several instances where Williams apparently has trouble distinguishing fact from fiction.  Williams has made no

---

[44] Adv. Dkt #79, p. 1, ¶12).

[45] Adv. Dkt #16-9, p. 22 (Exhibit C#32B to OCP's initial CSMF); Adv. Dkt #52-1, p. 5 (Exhibit 4 to the first amended complaint).

[46] Adv. Dkt #16-13, p. 15 (Exhibit J to OCP's initial CSMF); Adv. Dkt #52-1, p. 34 (Exhibit 13 to the first amended complaint).

showing that MEI ever successfully obtained the mortgage relief benefits promised to consumers, and yet the consumers' entitlement to full refunds has gone ignored. Claims are not being honored. No refunds have been made. The relief now sought by OCP essentially amounts to MEI and ME making good on their respective written guarantees to their clients, along with related equitable relief necessary to provide redress for the consumers having paid for a fraudulent service whose promised benefits never materialized.

Based on these findings, and those made as to OCP's first dispositive motion, I draw the following

## CONCLUSIONS OF LAW

## I.     Jurisdiction and Venue

1.     The bankruptcy court has personal and subject matter jurisdiction.[47] This is a core proceeding.[48]  Pending disputed claims against the proceeds from the sale of estate property, stemming from the MEI and ME mortgages and financing statements recorded against Cabebe's former properties since sold by the trustee, concern the administration of the estate, and require a determination of the validity of such liens before the proceeds can be distributed to creditors.  The bankruptcy

---

[47] 28 U.S.C. §§ 1334 and 157, 11 U.S.C. §§ 1328(a)(2), 523(a)(2)(A), 523(a)(7) and Fed. R. Bankr. P. Rule 7001.

[48] 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

17

court has statutory and constitutional power to enter a final judgment in this adversary proceeding. Venue is proper in this district.[49]

2.     The requisite consent to have the bankruptcy court hear and determine all matters encompassed within the first amended complaint may be inferred from conduct and from the absence of objection.[50]

3.     The bankruptcy court has the power to determine and enter judgment on OCP's claims,[51] including those for monetary, declaratory[52] and injunctive relief.[53]

## II.     OCP's Standing

4.     OCP has standing to assert the claims set forth in this adversary proceeding. State law authorizes OCP to investigate reported or suspected violations of laws enacted and rules adopted for the purpose of consumer protection, and to

---

[49] 28 U.S.C. §§ 1408 and 1409.

[50] *Mann v. Alexander Dawson, Inc. (In re Mann)*, 907 F.2d 923, 926 (9th Cir.1990); *Daniels–Head & Assoc. v. William M. Mercer, Inc. (In re Daniels–Head & Assoc.)*, 819 F.2d 914, 919 (9th Cir.1987); *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 410–11 (9th Cir.BAP2005); *In re Britt*, 385 B.R. 800 (B.A.P. 9th Cir. 2007).

[51] *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038 (9th Cir. 2014).

[52] 28 U.S.C. § 2201(a).

[53] *Idaho v. Edwards (In re Edwards)*, 233 B.R. 461, 478-79 (Bankr. D. Idaho 1999).

18

enforce such laws and rules by bringing civil actions or proceedings.[54]  OCP also has statutory authority to obtain restitution on behalf of consumers[55] and to obtain injunctive relief to enjoin any unlawful act or practice affecting consumers, trade, or commerce.[56]  Disgorgement is an equitable remedy that stems from the power to seek injunctive relief.[57]

5.  As the enforceability of disputed mortgages and financing statements recorded in the Bureau by MEI or ME is an issue that both immediately impacts the administration of the estate and serves as a real and ongoing threat to consumers, OCP is right to seek a declaration that all of the MEI and ME Bureau filings are unenforceable and void.[58]

---

[54] Haw. Rev. Stat. § 487-5.

[55] Haw. Rev. Stat. § 487-14.

[56] Haw. Rev. Stat. § 487-15.

[57] *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112-13 (9th Cir.1982); *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1159–60 (9th Cir.2010); *F.T.C. v. Gill*, 265 F.3d 944, 954, 958 (9th Cir.2001); *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102–03 & n. 34 (9th Cir.1994), *cert. denied*, 514 U.S. 1083 (1995).

[58] *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1056 (9th Cir. 2008); *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 944 (9th Cir. 1981).

19

### III.    Summary Judgment Standard

6.    Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[59]  In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial.[60]  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[61]  In making this determination, the court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in favor of the nonmoving party.  Where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.[62]

---

[59] Fed.R.Civ.P. 56(a), Fed. R. Bankr.P. 7056, made applicable by Fed. R. Bankr. P. 7056.

[60] *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).

[61] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[62] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 20 of 41

## IV.    Equitable Relief Generally

7.    The State has a legitimate government interest in mitigating the egregious effect of the large-scale mortgage rescue fraud perpetrated by Cabebe and others doing business as MEI and ME.

8.    The fraud has been investigated by OCP and sufficiently proven to the Court's satisfaction, and all that remains is for the Court to fashion equitable remedies suited to meet the necessities of this case.

9.    The exercise of broad equitable relief is generally appropriate in matters of consumer protection brought by a government agency to enforce a regulatory statute,[63] and in a case such as this the Court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.[64]

---

[63] *F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593, 599 (9th Cir. 2016), *cert. denied sub nom. Gugliuzza v. F.T.C.*, 137 S. Ct. 624 (2017), *and cert. denied sub nom. Gugliuzza v. F.T.C.*, 137 S. Ct. 624 (2017), citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

[64] *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir.1982), citing *Virginian R. Co. v. System Federation*, 300 U.S. 515, 552 (1937); *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir.1994), *cert. denied*, 514 U.S. 1083; *F.T.C. v. Stefanchik*, 559 F.3d 924, 931 (9th Cir.2009).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed 05/11/17   Page 21 of 41

10.　It is appropriate to tailor the remedial relief to meet the necessities of this case.[65]

11.　In addition to the relief already awarded against Cabebe, it is reasonable and appropriate under the circumstances to impose fines and penalties, award declaratory relief (such that any contracts or agreements made by or on behalf of MEI or ME with consumers be declared void and unenforceable at law and in equity, and the Bureau filings and any promissory notes made in favor of MEI or ME be declared void and released), and award permanent injunctive relief, which includes disgorgement of all ill-gotten monies MEI and ME received from consumers.

12.　OCP has proven by clear and convincing evidence that Defendants engaged in the same fraud previously found as to Cabebe.[66]  The prior findings of fact and conclusions of law made with respect to Cabebe are therefore equally applicable to MEI and ME, and those findings and conclusions will not be repeated here.

13.　OCP has also proven that Defendants repeatedly violated Haw. Rev. Stat. § 480-2(a) as Cabebe was shown to have done, and again, as the prior findings of fact

---

[65] *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir.1982), citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944); *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir.1994), *cert. denied*, 514 U.S. 1083; *F.T.C. v. Stefanchik*, 559 F.3d 924, 931 (9th Cir.2009).

[66] Adv. Dkt #25.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed 05/11/17   Page 22 of 41

and conclusions of law made with respect to Cabebe are found to be equally applicable to MEI and ME, those findings and conclusions will not be repeated here.

14.    The scope of the unlawful conduct will be revisited for purposes of formulating appropriate equitable relief against MEI and ME.

## V.    Non-Compensatory Fines and Penalties as to MEI and ME

15.    In addition to finding that MEI and ME at all times operated a mortgage reduction service with the intent and for the purpose of defrauding consumers,[67] the operation of MEI and ME constituted a series of separate and independent unfair and deceptive acts and practices in violation of Haw. Rev. Stat. § 480-2(a),[68] constituting at least ten violations per consumer under Haw. Rev. Stat. Chapter 480E,[69] each of which, under Haw. Rev. Stat. § 480E-11(a), constitutes a *per se* violation of Haw. Rev. Stat. § 480-2(a).  Operation of the mortgage reduction service constituted additional violations of applicable federal law,[70] each of which constitutes an additional violation of Haw. Rev. Stat. § 480-2(a).

---

[67] Adv. Dkt #25, p. 2, ¶¶ 3-4, p. 4, ¶ 20, p. 5, ¶ 28, and p. 11, ¶ 47.

[68] Adv. Dkt #25, p. 18, ¶¶ 18-21.

[69] Adv. Dkt #26, p. 27, ¶ 49.

[70] Adv. Dkt #25, p. 27, ¶¶ 52-53.

23

16.     The foregoing violations entitle OCP to the imposition of mandatory fines and penalties against MEI and ME.  Under Haw. Rev. Stat. § 480-3.1, fines of not less than $500 nor more than $10,000, calculated per violation and per day, "shall" be imposed against any person, company, association or corporation for each violation of Haw. Rev. Stat. § 480-2, which sum is in addition to remedies or penalties under all other laws, such as restitution.

17.     Additional mandatory fines and penalties against MEI and ME are warranted based upon the failure of MEI and ME to have registered with the DCCA to conduct business in Hawaii.  Under Haw. Rev. Stat. § 487-13(a), the failure to register to do business in the State constitutes a *per se* "unlawful act or practice" for which the violator "shall be subject to fines and penalties."  Under Haw. Rev. Stat. § 487-13(b), the statutory fine may not be less than $500 nor more than $2,500 for each unlawful act or practice, which sum is to be collected in a civil suit brought by OCP.

18.     The imposition of fines and penalties against MEI and ME will serve as both a punitive measure for past wrongs and help deter the Defendants from engaging in mortgage rescue fraud in the future.

19.     OCP's request that the Court impose non-compensatory fines and penalties against MEI in favor of OCP in the amount of one million dollars ($1,000,000) is, by any calculation, reasonable.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed 05/11/17   Page 24 of 41

20.    Whether the calculation of fines and penalties is based on day count or victim count or violation count, any of these methods of calculation are reasonable, and under any such calculation, a penalty of $1,000,000 against MEI is warranted, based on the gravity of the illegal conduct at issue.

## VI.    Declaratory Relief

21.    It is particularly appropriate at this juncture to refer to the earlier findings of fact and conclusions of law made in the case, because the existing record already constitutes a sufficiently strong case for declaratory relief, and in fact I concluded back in October of 2016 that fashioning some such relief was warranted.[71] With MEI and ME having been made parties and having been duly served in this adversary proceeding, awarding declaratory relief is now warranted.

22.    Having found and concluded that all MEI and ME filings in the Bureau to be bogus and fraudulent,[72] the need and appropriateness of broad declaratory relief aimed at remedying the problems of the bogus MEI and ME Bureau filings is readily apparent.

23.    Amongst the many compelling facts weighing in favor of declaratory relief is Cabebe's admission that there was no consideration to support the mortgages

---

[71] Adv. Dkt #25, p. 19, ¶ 22.

[72] Adv. Dkt #25.

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 25 of 41

or financing statements filed in the Bureau as part of the mortgage reduction scheme, and that all said filings are bogus. I am thoroughly convinced that the current record provides the Court with a sufficient factual basis to find said filings to be unenforceable at law or in equity, and declare all said filings in the Bureau void and released.

24.     Even in the absence of Cabebe's admission, it is beyond doubt that the MEI and ME Bureau filings were merely used to perpetrate the fraud. Declaratory relief is necessary to redress the impact of the bogus MEI and ME filings in the Bureau, and to otherwise protect consumers from any further harm stemming from the fraudulent scheme.

25.     In the event the consumers made promissory notes payable to MEI, those too are declared void and released.

26.     Law and equity allow the Court to award declaratory relief to prevent or redress fraud or injustice or protect the rights of third persons.

27.     In the absence of such declaratory relief, the consumers will continue to be hampered by the bogus filings, which appear as encumbrances against the titles to their properties and noted as liens by the title companies in their title reports, thereby burdening the consumers with phantom debt. Instead of providing consumers relief, the MEI and ME filings in the Bureau give the appearance that consumers are burdened with additional debt, since the MEI and ME filings were

26

ineffective to discharge or otherwise release or reduce the debt owed to the consumers' original (or real) mortgagees. Several of the victims of the scheme have filed for bankruptcy to try and protect their homes, and more such cases are likely to be filed.[73]

28.     Awarding declaratory relief is consistent with the liberal interpretation to be afforded Haw. Rev. Stat. § 480-2, which is deemed necessary and appropriate due to the remedial nature of the statute.[74]

29.     To partially remedy the effects of the unlawful conduct carried out by or on behalf of MEI or ME, all MEI financing statements, all MEI mortgages, and all ME financing statements recorded in the Bureau are declared unenforceable at law or in equity and are further declared void and released. The documents released include, but are not limited to:

        a.     The mortgage recorded in the Bureau on March 21, 2013, as Document No. A-48280548 created in favor of MEI by Dean Krakauer and Robbin K. Krakauer.

        b.     The mortgage recorded in the Bureau on April 16, 2013, as Document No. A-48541058 created in favor of Mortgage Enterprises [sic]

---

[73] Adv. Dkt #16-34 (<u>Exhibit EE</u> to OCP's initial CSMF).

[74] *Hawaiʻi Cmty. Fed. Credit Union v. Keka*, 94 Hawaiʻi 213, 229, 11 P.3d 1, 17 (2000).

27

Investments by Dean Krakauer and Robbin K. Krakauer.

c.      The mortgage recorded in the Bureau on May 17, 2013, as Document No. A-48850860 created in favor of MEI by Felix J. Pintor, Julie P. Pintor and Raymond P. Pintor.

d.      The mortgage recorded in the Bureau on May 17, 2013, as Document No. A-48850878 created in favor of MEI by Federico P. Olivas and Ofelia D. Olivas.

e.      The mortgage recorded in the Bureau on May 17, 2013, as Document No. A-48850859 created in favor of MEI by Jean-Francois Benoist and Joyce K. Marvel-Benoist.

f.      The mortgage recorded in the Bureau on May 23, 2013, as Document No. A-48910906 created in favor of MEI by Myrna M. Soliven.

g.      The mortgage recorded in the Bureau on January 6, 2015, as Document No. A-55840533 created in favor of Mortgage Enterprises [sic] Investments by Ms. Cabebe.

h.      The mortgage recorded in the Bureau on January 6, 2015, as Document No. A-54840534 created in favor of Mortgage Enterprises [sic] Investments by Ms. Cabebe.

i.      The mortgage recorded in the Bureau on January 6, 2015, as Document No. A-54840535 created in favor of Mortgage Enterprises [sic]

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 28 of 41

Investments by Rey P. Laforteza and Mary Jane Vita Pagal Laforteza.

j.      The mortgage recorded in the Bureau on May 26, 2015, as Document No. A-56240549 created in favor of MEI by Julio Llantada Pasion and Jocelyn Galano Pasion.

k.      The mortgage recorded in the Bureau on May 26, 2015, as Document No. A-56240550 created in favor of MEI by Arnold Galiza Subia and Evelyn Invencion Subia.

l.      The mortgage recorded in the Bureau on June 2, 2015, as Document No. A-56311063 created in favor of MEI by Danilo and Macrina Pillos.

m.      The mortgage recorded in the Bureau on June 5, 2015, as Document No. A-56341060 created in favor of Mortgage Enterprises [sic] Investments by Leonard G. Horowitz and Sherri Kane.

n.      The mortgage recorded in the Bureau on June 25, 2015, as Document No. A-56540979 created in favor of MEI by Miguel and Julita Asuncion.

o.      The mortgage recorded in the Bureau on June 26, 2015, as Document No. A-56550942 created in favor of MEI by Consolacion Visitacion Madamba and Benjamin Madamba.

p.      The mortgage recorded in the Bureau on June 26, 2015, as

29

Document No. A-56550941 created in favor of MEI by Loreen Troxel.

q.      The mortgage recorded in the Bureau on June 26, 2015, as Document No. A-56550943 created in favor of MEI by Ernest Celestino Pajela, Eleanor Pajela and Eunice Gano Pajela.

r.      The mortgage recorded in the Bureau on June 29, 2015, as Document No. A-56580983 created in favor of MEI by Edmund Marshall Domingo Calucag and Maria Bella Saladino Calucag.

s.      The mortgage recorded in the Bureau on July 22, 2015, as Document No. A-56811162 created in favor of MEI by Ceferino Castanos Pactanac, Jr. and Francisca Millon Pactanac.

t.      The mortgage recorded in the Bureau on August 11, 2015, as Document No. A-57010957 created in favor of MEI by Victoria Batangan Rumbawa.

u.      The mortgage recorded in the Bureau on September 21, 2015, as Document No. A-57421054 created in favor of MEI by Josephine Tabor Lapitan and Fernando Baybayan Lapitan.

v.      Any other mortgage that may have been created in favor of MEI and filed in the Bureau.

w.      Any financing statement that may have been recorded at the Bureau in favor of MEI.

30

x.     Any financing statement that may have been recorded at the Bureau in favor of ME.

y.      Any financing statement that may have been recorded at the Bureau by or on behalf of MEI that identified a consumer as creating a lien in favor of the same consumer or a family member of that consumer, and which purports to discharge any other liens recorded against the consumer's property, including but not limited to those financing statements recorded against Cabebe's properties.

z.     Any financing statement that may have been recorded at the Bureau by or on behalf of ME that identified a consumer as creating a lien in favor of the same consumer or a family member of that consumer, and which purports to discharge any other liens recorded against the consumer's property.

30.    Any claim based upon the voided mortgages or voided financing statements recorded against Cabebe's former properties is hereby denied, and the proceeds from the sale of those properties are now free and clear of any such claim stemming from the MEI or ME Bureau filings.

31.    To further remedy the effects of the unlawful conduct carried out by or on behalf of MEI or ME, all contracts and agreements made by consumers with MEI or ME are declared void and unenforceable at law or in equity.  Additionally, all promissory notes made by consumers in favor of MEI and ME are declared void and

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 31 of 41

unenforceable at law or in equity, and any attempt to enforce such a note shall constitute a separate violation of Haw. Rev. Stat. § 480-2(a).

32.    The awarded declaratory relief shall be reflected in the final judgment to accompany these Findings of Fact and Conclusions of Law, and recordation of said judgment in the Bureau shall serve to void and release the MEI and ME financing statements and the MEI mortgages.

## VII.    Permanent Injunctive Relief as to MEI and ME

33.    OCP was awarded permanent injunctive relief as to Cabebe, enjoining her from engaging in conduct that may violate Haw. Rev. Stat. § 480-2(a), and enjoining her from engaging in conduct, business or activity that falls within the scope of either Haw. Rev. Stat. Chapter 480E or the Mortgage Assistance Relief Services Rule, 12 C.F.R. Part 1015 (the "MARS Rule").  Such relief is equally appropriate against MEI and ME.

34.    MEI and ME were each acting as a "distressed property consultant" ("Consultant") and targeting owners of "distressed property" as those terms are defined in Haw. Rev. Stat. § 480E-2, to the extent MEI and ME recruited consumers who, at the time, owned residential property that: (i) was in foreclosure, or at risk of foreclosure because payment on any loan secured by residential property was more than sixty days delinquent, (ii) had a lien or encumbrance charged against it because of nonpayment of any taxes, lease assessments, association fees, or maintenance fees, (iii) was at risk

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed 05/11/17   Page 32 of 41

of having a lien or encumbrance changed against it because the payment of any taxes, lease assessments, association fees, or maintenance fees was more than ninety days delinquent, (iv) secured a loan for which notice of default had been given, or (v) secured a loan that had been accelerated. In any of these scenarios, the consumers were considered owners of "distressed property" who were entitled to the protections of Haw. Rev. Stat. Chapter 480E.

35. As a Consultant, MEI and ME were each, at all times relevant herein, subject to the requirements and prohibitions applicable to Consultants pursuant to Haw. Rev. Stat. Chapter 480E.

36. MEI and ME failed to comply with the requirements and prohibitions applicable to Consultants pursuant to Haw. Rev. Stat. Chapter 480E in numerous respects, including but not limited to: (i) failing to use written contracts for the services to be provided, failing to discharge all services to be performed, and failing to disclose the compensation to be received by the Consultant (all as required by Haw. Rev. Stat. § 480E-3), (ii) failing to notify consumers in writing of their right to rescind any agreement, failing to use the precise language required by statute, and failing to use the required cancellation form (all as required by Haw. Rev. Stat. § 480E-4), (iii) misrepresenting or concealing material facts (prohibited by Haw. Rev. Stat. § 480E-10(a)(1)), (iv) failing to identify and describe the services to be performed (as required by Haw. Rev. Stat. § 480E-10(a)(4)), (v) receiving compensation before fully

33

performing (prohibited by Haw. Rev. Stat. § 480E-10(a)(6)), and (vi) receiving compensation exceeding the statutory maximum (in violation of Haw. Rev. Stat. § 480E-10(a)(7)).

37.    MEI and ME are each permanently enjoined from acting as a Consultant in the future.

38.    MEI and ME were each acting as a "Provider" of a "Mortgage Assistance Relief Service," as those terms are defined in MARS Rule § 1015.2, and were at all times required to comply with the MARS Rule.

39.    MEI and ME each violated MARS Rule § 1015.5(a) by both requesting and receiving advance fees from consumers.

40.    MEI and ME each committed further violations of the MARS Rule by representing that consumers should not contact their lenders (MARS Rule § 1015.3(a)), misrepresenting to consumers the likelihood of obtaining the desired relief (MARS Rule § 1015.3(b)(1)), misrepresenting to consumers the terms of their loans (MARS Rule § 1015.3(b)(5)), misrepresenting to consumers the term or conditions under which they could obtain refunds (MARS Rule § 1015.3(b)(6)), misrepresenting to consumers that the service had been completed (MARS Rule § 1015.3(b)(7)), misrepresenting to consumers the percentage of debt that will be saved through the service (MARS Rule § 1015.3(b)(10)), misrepresenting to consumers the total cost of the service (MARS Rule § 1015.3(b)(12)), providing

34

substantial assistance or support to a service provider knowing the provider is engaged in acts or practices which violate the MARS Rule (MARS Rule § 1015.3(b)(10)), and failing to keep numerous categories of records for two years (MARS Rule § 1015.9). MEI also violated the MARS Rule by misrepresenting to consumers that they will receive legal representation (MARS Rule § 1015.3(b)(8)).

41.     MEI and ME are each permanently enjoined from acting as a Provider in the future.

## VIII. Disgorgement as to MEI and ME

42.     OCP's request that the Court order the disgorgement of all ill-gotten gains derived from the fraudulent conduct at issue is a reasonable request.

43.     Unlike restitution, which focuses on the victim and making the victim whole, disgorgement focuses on the violator. The paramount purpose of disgorgement is to make sure that wrongdoers do not profit from their wrongdoing.[75]

44.     While disgorgement is a form of injunctive relief,[76] it is not conditioned upon a showing of the risk of future violations; "[t]he need to show a likelihood of future violations is limited to cases involving a permanent injunction."[77]

---

[75] *S.E.C. v. First City Financial Corporation, Ltd.*, 890 F.2d 1215 (D.C. Cir. 1989); *S.E.C. v. Tome*, 833 F.2d 1086 (2d Cir. 1987), *cert. denied*, 486 U.S. 1014–15 (1988); *F.T.C. v. Gem Merchandising Corp.*, 87 F.3d 466, 470 (11th Cir. 1996).

[76] *S.E.C. v. Clark*, 915 F.2d 439, 453 (9th Cir. 1990).

[77] *S.E.C. v. Colello*, 139 F.3d 674, 679 (9th Cir. 1998), citing *S.E.C. v. Fehn*, 97 F.3d 1276, 1295 (9th Cir.1996), *cert. denied*, 522 U.S. 813 (1997); *S.E.C. v. Bilzerian*, 29

35

45. Disgorgement is routinely awarded to the Federal Trade Commission ("FTC") as ancillary equitable relief when the FTC seeks to enjoin unfair or deceptive acts or practices under the Federal Trade Commission Act ("FTCA").[78] The power of the FTC "to enjoin future violations . . . [under the FTCA] carries with it the inherent power to deprive defendants of their unjust gains from past violations . . . [of the FTCA]."[79]

46. As the FTC and OCP are government regulatory agencies created for the like purpose of protecting consumers from the same types of unlawful conduct (notably, unfair or deceptive acts or practices), and as both agencies have comparable statutory authority to obtain injunctive relief (the FTC under section 13(b) of the FTCA, codified at 15 U.S.C. § 53(b), and OCP under Haw. Rev. Stat. § 487-15), and as the rules, regulations and decisions of the FTC and the federal courts

---

F.3d 689, 695 (D.C.Cir.1994); *S.E.C. v. The Electronics Warehouse, Inc.*, 689 F.Supp. 53, 68 (D.Conn.1988).

[78] *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112-13 (9th Cir.1982); *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1159–60 (9th Cir.2010); *F.T.C. v. Gill*, 265 F.3d 944, 954, 958 (9th Cir.2001); *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1102–03 & n. 34 (9th Cir.1994), *cert. denied*, 514 U.S. 1083 (1995).

[79] *F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593, 599 (9th Cir. 2016), *cert. denied sub nom. Gugliuzza v. F.T.C.*, 137 S. Ct. 624 (2017), *and cert. denied sub nom. Gugliuzza v. F.T.C.*, 137 S. Ct. 624 (2017), citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

36

overseeing FTC actions serve as a guide to the enforcement of Haw. Rev. Stat. § 480-2,[80] OCP is every bit as much entitled to seek disgorgement as the FTC.

47.     One key purpose of the disgorgement remedy is to remove the incentive to commit violations by demonstrating to the potential violator that unlawful conduct will not be profitable.  According to the FTC's policy statement of 2003, this purpose can best be served when the violator can determine in advance that its conduct would probably be considered illegal.[81]

48.     Cabebe and her collaborators were all on notice that the manner in which MEI and ME attempted to assist consumers facing foreclosure was illegal, because it is all spelled out in Haw. Rev. Stat. Chapter 480E and in the MARS Rule. The Court has already concluded that the mortgage reduction service was operated in violation of Chapter 480E "in numerous respects, including but not limited to: (i) failing to use written contracts for the services to be provided, failing to discharge all services to be performed, and failing to disclose the compensation to be received by the Consultant (all as required by Haw. Rev. Stat. § 480E-3), (ii) failing to notify consumers in writing of their right to rescind any agreement, failing to use the precise language required by statute, and failing to use the required cancellation form (all as

---

[80] Haw. Rev. Stat. § 480-2(b).

[81] 68 Fed. Reg. 68 Fed. Reg. 45,820, 45,821 (Aug. 4, 2003).

37

required by Haw. Rev. Stat. § 480E-4), (iii) misrepresenting or concealing material facts (prohibited by Haw. Rev. Stat. § 480E-10(a)(1)), (iv) failing to identify and describe the services to be performed (as required by Haw. Rev. Stat. § 480E-10(a)(4)), (v) receiving compensation before fully performing (prohibited by Haw. Rev. Stat. § 480E-10(a)(6)), and (vi) receiving compensation exceeding the statutory maximum (in violation of Haw. Rev. Stat. § 480E-10(a)(7)).[82]

49.    Of all the protections in place for consumers through Haw. Rev. Stat. Chapter 480E and the MARS Rule, none may be more important than the prohibition on collecting advance fees, because fraudsters are on notice of the futility in attempting to render services for which they will not be paid *unless* they are successful.

50.    Because consumers paid MEI and ME *before* any mortgage assistance relief service had been fully performed or provided, the monies paid by consumers to MEI and ME were obtained illegally.  Collection of advance fees from distressed property owners for mortgage assistance relief services is strictly prohibited under both state law[83] and federal law.[84]  Because MEI and ME at all times acted illegally in collecting money from consumers, disgorgement is an appropriate remedy.

---

[82] Adv. Dkt # 25, p. 26, ¶ 49.

[83] Haw. Rev. Stat. § 480E-10(a)(6).

[84] MARS Rule § 1015.5(a).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed 05/11/17   Page 38 of 41

51.     Due in large part to Cabebe's deliberate and unreasonable failure and refusal to cooperate with OCP's investigation, the identities of many of the consumers defrauded by MEI or ME remain unknown to OCP.  While the lack of this information may make it impractical for OCP to pursue restitution for the unknown victims, there is no reason why Defendants should benefit by that and in essence receive a windfall.  In cases such as this, where restitution to all of the impacted consumers is either impossible or impractical, an equitable order for disgorgement has been shown to be a particularly appropriate remedy.[85]

52.     As Cabebe, Malinay and Franco were affiliated with both MEI and ME, confusion on the part of consumers as to whether they were dealing MEI or ME is understandable, but this carries no legal consequence.  In the analogous context of securities regulation, "'[w]here two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they may be held jointly and severally liable for the disgorgement of illegally obtained

_____

[85] *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1103 n. 34 (9th Cir.1994), *cert. denied*, 514 U.S. 1083 (1995).

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 39 of 41

proceeds.'"[86] This same reasoning has been borrowed and applied by the Ninth Circuit Court of Appeals to cases brought by the FTC.[87]

53.     Finally, disgorgement has been used as an appropriate means to remedy violations of the MARS Rule, as in the case of foreclosure defense and loan modification revenue having been derived through deceptive solicitations and misleading sales tactics, and having been impermissibly collected in advance of the services being rendered.[88]

54.     Given that the MEI/ME mortgage reduction service was a fraud, enticing consumers with illusory benefits backed by false guarantees, and was illegally operated in blatant disregard of State and federal requirements and prohibitions applicable to mortgage assistance relief service "Consultants" (as that term is used in Haw. Rev. Stat. Chapter 480E) and "Providers" (as that term is used in the MARS Rule), and as neither MEI nor ME was even registered to do business in Hawaii, all of the revenues taken in by MEI and ME represent ill-gotten gains, and whatever those amounts may total, and wherever they may be located, they are

---

[86] *S.E.C. v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1117 (9th Cir.2006) (brackets omitted) (quoting *S.E.C. v. First Pacific. Bancorp*, 142 F.3d 1186, 1191 (9th Cir.1998)); *S.E.C. v. Colello*, 139 F.3d 674 (9th Cir. 1998).

[87] *F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016), *cert. denied sub nom. Gugliuzza v. F.T.C.*, 137 S. Ct. 624 (2017), *and cert. denied sub nom. Gugliuzza v. F.T.C.*, 137 S. Ct. 624 (2017).

[88] *F.T.C. v. Lanier Law, LLC*, 194 F. Supp. 3d 1238, 1287 (M.D. Fla. 2016).

40

nonetheless subject to disgorgement, and accordingly, all such monies paid to MEI and ME shall be disgorged to OCP.

**END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT,**

**OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

U.S. Bankruptcy Court - Hawaii   #16-90011   Dkt # 111   Filed  05/11/17   Page 41 of 41